DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Christopher A. King has appealed from his conviction in the Summit County Common Pleas Court of three counts of aggravated robbery, violations of Section 2911.01(A)(1) of the Ohio Revised Code, and one firearm specification. In his sole assignment of error, he has argued that the jury's verdict was against the manifest weight of the evidence. This Court affirms the verdict because the jury did not lose its way and did not create a manifest miscarriage of justice.
 I.
Defendant was arrested on July 14, 1991. That night, defendant, Nathaniel Palmer, and a third individual, claimed by defendant at trial to be a man named Pat Robertson, were visiting various bars near the University of Akron. According to defendant, Mr. Robertson needed money, so the three parked near a bank and approached an automatic teller machine in an enclosed but well-lit glass booth on the outside of the bank building.
Brian Bacik, Richard Pascolini, and John Coyne were using the automatic teller machine. Like defendant and his companions, the three young men were visiting bars near the university and, being short of cash, stopped at the bank to withdraw money. According to these three, defendant approached them, pointed a gun at them, and ordered Mr. Bacik, who had just withdrawn $10 from the machine, to throw his wallet to the ground. After Mr. Bacik did that, defendant struck Mr. Bacik's head with the butt of the pistol, knocking him to the ground and opening a wound that would require four stitches to close. Mr. Bacik's wallet was taken and was not recovered.
According to testimony at trial, defendant then ordered Mr. Pascolini and Mr. Coyne to hand over their watches, because neither had any money. Defendant further told Mr. Coyne to withdraw "as much money as he could from the machine with his bank card." During this time, defendant pointed the gun at Mr. Pascolini's face, cocked it, then stuck it against Mr. Coyne's back. Mr. Coyne attempted to make a withdrawal, but fumbled with the keypad and entered an incorrect amount. No money came out. He was told to try again. Eventually, he managed to withdraw $100, but that money was not taken.
While the incident at the bank was occurring, Louis and Shirley Kalman were driving through downtown Akron on their way home. Mr. Kalman was driving approximately ten to fifteen miles per hour. Both Mr. and Mrs. Kalman noticed the commotion at the bank. Mrs. Kalman testified that she saw defendant hit Mr. Bacik on the head with his gun. Mr. Kalman went to the police station a few blocks away and alerted Officer Robert Swain of the Akron Police Department, who had just started his shift. Officer Swain radioed in the incident and, with Mr. and Mrs. Kalman following him, drove to the bank.
Officer Dominic Avellino of the Akron Police Department heard the report on his radio and responded. He arrived to find defendant and his companions running from the bank. He testified that he observed three men running, but lost sight of them briefly when they rounded the corner of the bank. As he rounded the corner, he noticed defendant and Mr. Palmer entering a car. Officer Avellino drew his weapon, approached the vehicle, and ordered the two occupants to raise their hands. Defendant and Mr. Palmer surrendered without a struggle and were placed under arrest. Defendant told the officers that a man named Robert Taylor was the third individual. At trial, however, defendant claimed that he had just made up that name, and that Mr. Robertson was really the third individual. The third suspect was never arrested.
A search of the vehicle uncovered a loaded .45 Colt single-action revolver under the passenger seat, where defendant had been sitting. The gun was cocked. A search of defendant uncovered a watch, later identified by Mr. Coyne as his. Defendant was charged with three counts of aggravated robbery with a firearm specification on each count.
On October 10, 1991, defendant and Mr. Palmer were tried together. Defendant admitted that he owned the gun found under the passenger seat, but carried it only for protection because he lived in a dangerous neighborhood. He testified that Mr. Robertson had a gun similar to his and had used it to commit the robbery. He claimed that he had not known that Mr. Robertson had the gun or was planning a robbery. In regard to Mr. Coyne's watch, defendant claimed that he had given Mr. Robertson some jewelry to hold earlier that day. As they were running from the bank, Mr. Robertson suggested they split up, so he demanded his jewelry back. According to defendant, Mr. Robertson handed him not only his jewelry, but also the stolen watch.
On October 16, 1991, the jury convicted defendant of three counts of aggravated robbery with a firearm specification as to each count. The trial court then imposed sentences for the three counts of aggravated robbery and one firearm specification. After sentencing, defendant requested appellate counsel, but, apparently due to an administrative error, the trial court failed to appoint anyone. As a result, defendant failed to perfect a timely appeal of his conviction and sentence. On September 9, 1996, he filed a petition for post-conviction relief. He argued that the trial court's failure to appoint an attorney denied him his right to appellate counsel. On May 14, 1997, the trial court granted defendant's petition for post-conviction relief, vacated his 1991 sentence, then re-sentenced him to allow him to perfect a timely appeal. See State v. Gover (1995), 71 Ohio St.3d 577, 581. From that judgment, defendant has timely appealed to this Court.
 II.
Defendant's sole assignment of error is that the jury's verdict was against the manifest weight of the evidence. He has argued that he introduced evidence "that he was not the principal in the robbery, he was not the person with the gun, and that his gun was not the gun used in the robbery." He has asserted that Pat Robertson, the alleged third individual, was the perpetrator of the robbery and that the State's witnesses had incorrectly identified defendant.
To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. Defendant was convicted of three counts of aggravated robbery and a firearm specification. Pursuant to Section 2911.01(A) of the Ohio Revised Code:
 No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:
 (1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control[.]
The State presented testimony from nine witnesses. The first, Mr. Bacik, identified defendant as the man who had approached him with the gun and demanded that he and his companions give up their money. Mr. Bacik also identified defendant as the one who had struck him with the gun, causing him injury. Mr. Bacik "fell down from the blow," and "it [his head] was bleeding a lot." In addition, Mr. Bacik's wallet was taken and was never recovered. Finally, Mr. Bacik identified the gun defendant owned, found under defendant's seat in the car in which defendant was riding, as the one used that night:
 Because of the silver. It was so big. And because of the silver and wooden handle. I remember that, because I had a good look at it when he came in and he was pointing it at us.
Mr. Pascolini, also one of the victims of the crime, identified defendant as the man with the gun who had hit Mr. Bacik on the head. Mr. Pascolini testified that defendant then stuck the gun against his cheek. He too stated that the gun defendant owned was "definitely the gun that was used" the night of the robbery.
Mr. Coyne, the last of the victims, did not get a good look at the three assailants, so he could not identify defendant as having been one of them. He did, however, testify that his watch had been taken. That watch was the same one found in defendant's pocket after his arrest. Mr. Coyne also identified defendant's gun as the one used that night.
Both Mr. and Mrs. Kalman stated that defendant had been the man holding the gun on the victims. They too identified defendant's gun as the weapon used that night.
Three of the officers of the Akron Police Department who responded that night testified about their roles in defendant's apprehension. Officer Robert Swain testified that defendant had blood on his hands when he was arrested, but he was not injured. Officer Swain also stated that, when defendant's gun was found, the hammer was back, bolstering Mr. Bacik's testimony that defendant had cocked his weapon while holding it against Mr. Pascolini's face.
Defendant countered the State's evidence by presenting testimony from Theodore Parker, the individual who had loaned defendant and his companions the car that night. Mr. Parker stated that Mr. Robertson, one of the men to whom he had loaned his vehicle and the one defendant claimed to have actually committed the robberies, was slightly larger than defendant. Defendant has pointed to Mr. Parker's testimony to argue that the State's witnesses confused defendant and Mr. Robertson. He has argued that the larger of the two men, that is, Mr. Robertson, was the actual perpetrator. Defendant has also argued that Mr. Bacik's injury was significant and bled profusely, yet no blood was found on defendant's gun or on his clothes. Defendant has concluded that he demonstrated at trial that he was not the perpetrator of the offense and that his gun was not the gun used during the robbery.
Upon review of the entire record in this case, after weighing the evidence and all reasonable inferences, and after considering the credibility of the witnesses, this Court concludes that the State's evidence dwarfed defendant's such that the jury's verdict was not against the manifest weight. The State's evidence placed defendant at the bank on the night of July 14, 1991. It showed that defendant pointed a gun at the victims, hit one of them on the head with it, demanded money from them, and took a wallet and two watches. No less than four witnesses, including two of the victims, identified defendant as the perpetrator, and five identified defendant's gun as the one used during the robbery. In light of such overwhelming evidence, the jury did not clearly lose its way and did not create such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. Consequently, the jury's verdict was not against the manifest weight of the evidence, and defendant's assignment of error is overruled.
 III.
Defendant's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ CLAIR E. DICKINSON
FOR THE COURT
QUILLIN, J., P. J.
REECE, J. CONCUR.