This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Gary Gallentine, appeals his conviction in the Medina County Court of Common Pleas. We affirm.
 I.
On April 9, 2000, at approximately 9:00 p.m., a fire broke out in Gallentine's room at the Love-N-Care Assisted Living facility located in Seville, Ohio. Gallentine was indicted for aggravated arson, under R.C.2909.02(A)(1) on April 19, 2000. Gallentine is a disabled Vietnam war veteran who has been diagnosed with paranoid schizophrenia. On May 10, 2000, Gallentine entered a plea of not guilty to the charge and also entered a plea of not guilty by reason of insanity. On December 1, 2000, a jury found Gallentine guilty of aggravated arson, a felony in the first degree. The trial court sentenced Gallentine to five years in prison on January 26, 2001. This appeal followed.
 II. GALLENTINE'S ASSIGNMENT OF ERROR: THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF AGGRAVATED ARSON IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE FAILED TO PROVE THAT THE DEFENDANT COMMITTED AN ACT OF AGGRAVATED ARSON.
In his only assignment of error, Gallentine argues that his conviction was against the manifest weight of the evidence. Gallentine asserted the defenses of not guilty and not guilty by reason of insanity,[1]
claiming that he set this fire during an acute episode of chronic paranoid schizophrenia. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
R.C. 2909.02(A)(1) provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]"
At the trial, the state presented the testimony of Deputy Brooks of the Medina County Sheriff's Office, who questioned Gallentine at the scene of the fire. Gallentine told the deputy that he started the fire in his room because other residents at the facility were smoking marijuana and drinking alcohol, which was against the rules of the facility. He also told the deputy how the fire started, which was consistent with the physical evidence. Deputy Brooks also testified that he helped some of the residents, all of whom are either physically or mentally disabled veterans, out of the burning building, one of which is confined to a wheelchair.
The State also presented the testimony of Michael Cook, co-owner of the assisted living facility, who testified that Gallentine was one of his residents. Mr. Cook testified that the fire had caused approximately twenty-five thousand dollars ($25,000.00) in damage. He also stated that he suspected some alcohol use at the facility when he found empty liquor bottles around the premises prior to the date of the fire. Mr. Cook testified that he did not permit drinking alcohol or illicit drug use at the facility.
Also testifying for the state was Jack Snoddy, the volunteer fire chief who was in command and the first to arrive at the scene of the fire. Mr. Snoddy testified to the intensity of the fire and the serious risk it posed to the safety of the firefighters and the residents. He also verified that the fire had started in Mr. Gallentine's room, apparently with bed linens or clothing set alight on the bed.
On rebuttal, Dr. Noffsinger testified for the prosecution. Dr. Noffsinger is a forensic psychiatrist who manages Northcoast Behavioral, a state run hospital for individuals who have been found legally insane. Dr. Noffsinger evaluated Gallentine on September 26, 2000. Dr. Noffsinger believes Gallentine does suffer from paranoid schizophrenia, but that not all of his actions are attributable to his mental illness.
Dr. Noffsinger's testimony also included his belief that when an individual has psychotic thoughts, he is usually able to describe them in detail, because they create such a strong experience. Dr. Noffsinger related that Gallentine told him he was having paranoid thoughts around the time of the fire, but Gallentine could not describe them. Dr. Nosffinger stated that this was not consistent with Gallentine's claim that he was having psychotic thoughts at the time he set the fire.
Dr. Noffsinger also testified that he believed Gallentine was not always able to control his anger. Gallentine told him he was angry when Mr. Cook took away everyone's vending machine and television privileges as a punishment when Mr. Cook discovered empty beer bottles on the premises. Gallentine also told Dr. Noffsinger that he saw a resident with beer and he just "blew a fuse." He said he was "pissed off." He was angry, because the owners were going to withhold additional privileges if they found out someone was drinking beer again. Gallentine told Dr. Noffsinger that he started the fire as a way of showing his anger. Gallentine also told Dr. Noffsinger during the evaluation that he was afraid the other residents would come after him because he started the fire.
Dr. Noffsinger testified that Gallentine told him he thought the fire department would come because of the fire. Gallentine told Dr. Noffsinger that he didn't think it would be a very big fire, and that he would probably just get a ticket for starting the fire. This was important, according to Dr. Noffsinger, because Gallentine knew that what he was doing was wrong, "because we don't get tickets for not acting wrongly."
During the evaluation with Dr. Noffsinger, Gallentine admitted that he set the fire, and that he knew he would be in trouble with the police, his doctor and his social worker. He thought he would be kicked out of the facility for starting the fire, and he admitted that he wanted to leave the facility. Gallentine's statement to the police officer on the night of the fire indicated that Gallentine knew the fire was wrong because Gallentine had no time to reflect on what he was going to say at the time the statement was made, and it was probably an accurate account of his behavior and motives. Dr. Noffsinger outlined thirteen reasons why he believed Gallentine knew the wrongfulness of his behavior at the time of the fire. Dr. Noffsinger believed Gallentine had a severe mental disorder at the time of the fire, but that the disorder "did not impair his knowledge of the wrongfulness during the offense."
On cross-examination Dr. Noffsinger testified that the type of medication Gallentine takes builds up in the body's system and that going just one day without medication would not have a significant, adverse effect on his behavior. Dr. Noffinger conceded that most of the evidence shows that Gallentine is mentally ill, but that not all of his actions are due to his mental illness. Dr. Noffsinger stated that, within a reasonable degree of medical certainty, he believed Gallentine knew the wrongfulnes of his actions when he set the fire.
Dr. Perez, Gallentine's treating psychiatrist for the Veteran's Administration ("V.A.") since 1998, testified for the defense. Dr. Perez testified that Gallentine suffers from chronic paranoid schizophrenia. Dr. Perez testified that Gallentine suffers from delusions in general, delusions of persecution, hallucinations, hearing voices, suicidal thoughts, and homicidal thoughts. According to Dr. Perez, Gallentine takes high doses of anti-psychotic drugs, but does not respond well to his medication, requiring it to be continually adjusted.
Dr. Perez also testified that during one acute episode of symptoms, Gallentine called 9-1-1 to report to the police that he was having homicidal thoughts against the residents of his group home. He also reported several acute psychotic episodes to the V.A. hospital and had been admitted to the hospital twenty-three times since 1997. Dr. Perez stated that Gallentine attempted to commit suicide several times and inflicted serious bodily harm on himself. Dr. Perez testified that Gallentine broke a window in a group home because he was angry that a dog bit him.
Dr. Neuhaus, a psychiatrist for the Psycho-Diagnostic Clinic in Akron, Ohio, also testified for the defense. Dr. Neuhaus performed a court ordered evaluation of Gallentine on June 14, 2000, and concluded that Gallentine suffers from chronic paranoid schizophrenia. Dr. Neuhaus testified that Gallentine said he set the fire impulsively, that it was not planned. Gallentine told Dr. Neuhaus that he was angry with the residents of the assisted living facility, because they were breaking the rules and would not share their beer with him. Gallentine told Dr. Neuhaus that he wanted to move out of the facility, and he believed that starting the fire would help him leave. He also told Dr. Neuhaus that he set the fire "to let someone know I wasn't going to be taken so lightly again."
Dr. Neuhaus stated that even someone who has chronic paranoid schizophrenia, like Gallentine, is neither delusional nor hallucinating every moment. Dr. Neuhaus stated that sometimes a person with paranoid schizophrenia can respond rationally to his environment and that anger is sometimes a rational response in some circumstances.
Gallentine's social worker, Eric Steiner, also testified for the defense. Mr. Steiner testified that Gallentine was afraid of the other residents at the facility. Gallentine told Mr. Steiner that, on the day of the fire, pressure was building up in his head, that he was hearing voices from the television, and that another resident was yelling at him and coming after him down the hallway. Gallentine told Mr. Steiner that he was angry and afraid, so he fashioned a weapon from a razor to protect himself. Gallentine told Mr. Steiner that he set the fire in his bedroom and then locked himself in his bathroom with the knife for protection. Mr. Steiner also testified that Gallentine told him he did not take his medications in the morning on the day of the fire.
Although there is little doubt from the record that Gallentine is suffering from paranoid schizophrenia, none of the witnesses who testified for Gallentine could state, within a reasonable degree of medical certainty, that Gallentine set the fire during an acute episode of symptoms due to paranoid schizophrenia. From the testimony presented at trial, we believe that a reasonable jury could infer that Gallentine set the fire out of anger, that he was not having an acute psychotic episode at the time of the fire, and that Gallentine knew that setting the fire was wrong.
We have reviewed the record of the trial court, weighed the evidence and considered the credibility of the witnesses. We find that the state's evidence, viewed in a light most favorable to the prosecution, provides ample basis for concluding that all of the elements of aggravated arson have been met. The jury did not clearly lose its way nor is it a manifest miscarriage of justice to affirm the jury's verdict. Further, the evidence here does not weigh heavily in favor of the defendant.
 III.
Having overruled Gallentine's single assignment of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
CARR, J., WHITMORE, J. CONCUR.
[1] Defendant does not raise the issue of insanity in his assignments of error, only the manifest weight argument. Therefore, we confine our discussion to his manifest weight argument.