This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Alicea Geckler, appeals from the judgment of the Summit County Court of Common Pleas. We affirm.
 I.
{¶ 2} On June 11, 2001, Appellant was indicted for domestic violence, pursuant to R.C. 2919.25(A) and felonious assault, pursuant to R.C. 2903.11(A)(1) and (A)(2), alternatively. A jury trial was held on November 8 and 9, 2001 and the jury returned a verdict of guilty on the charges of domestic violence and felonious assault. Appellant was sentenced accordingly. This appeal followed.
 II.
{¶ 3} Appellant raises three assignments of error. To facilitate review, we will consolidate the first and second assignments of error.
 A. First Assignment of Error {¶ 4} "APPELLANT'S CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
 Second Assignment of Error {¶ 5} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 6} First, we will consider Appellant's assertion that her convictions for domestic violence and felonious assault were against the manifest weight of the evidence. Next, we will address the assertion that the evidence was insufficient to sustain her convictions. The assignments of error lack merit.
 Manifest Weight
{¶ 7} When determining whether a conviction was against the manifest weight of the evidence,
 {¶ 8} "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 9} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 10} First, in order to find Appellant guilty of domestic violence, the prosecution needed to prove the elements which are set forth in R.C. 2919.25(A) as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Second, in order to find Appellant guilty of felonious assault as charged, the prosecution must have established a violation of R.C. 2903.11(A). Felonious assault occurs when a person "knowingly [does] either of the following: (1) Cause serious physical harm to another or * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1)-(2).
{¶ 11} R.C. 2901.22(B) defines the culpable mental state of knowingly and states, in pertinent part, that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Physical harm to persons means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.2901.01(A)(3). In addition, a deadly weapon includes "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). In the instant matter, Appellant does not contest the finding that the knife constituted a deadly weapon or that the injury at issue constituted serious physical harm. Applying the foregoing to the facts of this case, we turn now to the evidence adduced at trial.
{¶ 12} In the present case, Jason Safer testified that he is a paramedic and that he provided assistance to Greg Geckler, Appellant's husband, on June 1, 2001. Mr. Safer further testified that Mr. Geckler had a cut on his head and that the cut was bleeding. Mr. Safer explained that Mr. Geckler originally stated that he received the cut when he fell and hit his head on a glass table but that Mr. Geckler later changed his story and stated that Appellant had stabbed him in the head with a knife. Mr. Safer also explained that the wound did not look like Mr. Geckler had fallen and hit his head on the table. Mr. Safer testified that Mr. Geckler told him that he lied with regard to his original story because he did not want Appellant to get in trouble. Dr. Charles Tarbert testified that he is a resident physician and that he treated Mr. Geckler with regard to his injury. Dr. Tarbert stated that Mr. Geckler had an incised wound that was five inches long, was at the depth of the subcutaneous tissue, and had to be treated with nine surgical staples. He also stated that it was very unlikely that such a wound was caused by a fall.
{¶ 13} Officer James Lambert of the Akron Police Department testified that, when he arrived at the scene of the injury, Mr. Geckler was asserting that he did not need treatment because he had merely fallen and hit his head. Officer Lambert testified that Appellant was inside the home. He explained that it was apparent that both parties had been drinking alcohol. Officer Lambert stated that Appellant told him that Mr. Geckler fell and hit his head. Officer Lambert also stated that he saw a knife sitting in the kitchen sink.
{¶ 14} Detective James Pasheilich of the Akron Police Department testified that, when he originally spoke with Appellant, she told him that Mr. Geckler hurt his head when he fell down. Later, she changed her story and told him that he hurt himself when he was cutting up tomatoes in the house. Detective Pasheilich stated that it was obvious that Appellant had been drinking and that there was no evidence of any tomatoes in the house.
{¶ 15} Detective Pasheilich testified that he talked to Mr. Geckler in the hospital treatment room. Mr. Geckler told him that he had been sitting on his couch when Appellant walked in the room with the knife but that, at first, he was not very concerned because she was "always pulling knives on him." When Detective Pasheilich asked him why Appellant would have approached him with a knife, Mr. Geckler stated that he had "a black roommate and [Appellant] doesn't like blacks." Detective Pasheilich testified that Appellant had also personally discussed the roommate situation with him and that she had related to the detective that she did "not like blacks." Detective Pasheilich stated that Mr. Geckler made it very clear that he did not want Appellant to go to jail for her actions.
{¶ 16} Mr. Geckler testified that he, rather than Appellant, was the person who had control of the knife that caused his wound. He explained that he had been intoxicated and had not taken his psychiatric medication for several days. He also explained that he had gotten hurt during a struggle over the knife and that Appellant had merely been trying to take the knife away from him so that he would not hurt himself. Later, he clarified his statements, testifying that the only thing he remembered was a struggle and that he thought Appellant might have been trying to take the knife from him but that he could not say this for certain. Mr. Geckler testified that he did realize that he had originally told the police that he fell but explained that what he meant was that there was vagueness with regard to what happened with the knife. Mr. Geckler denied that he ever lied to the police. He also denied that he ever referred to Appellant disliking the roommate. Finally, he denied that had a discussion with Detective Pasheilich in the hospital regarding his wife injuring him.
{¶ 17} After a careful review of the record, we cannot conclude that the trier of fact lost its way and created a manifest miscarriage of justice when, first, it convicted Appellant of domestic violence and, second, convicted her of felonious assault. Although conflicting testimony was presented, we refuse to overturn the verdict because the jury believed other testimony. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony."State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Accordingly, we hold that Appellant's convictions were not against the manifest weight of the evidence.
 Sufficiency
{¶ 18} "Because sufficiency is required to take a case to the [trier of fact], a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Having already found that Appellant's convictions were not against the manifest weight of the evidence, we conclude that there was sufficient evidence to support the verdict in this case. Consequently, Appellant's first and second assignments of error are without merit.
 B. Third Assignment of Error {¶ 19} "THE TRIAL COURT GAVE ERRONEOUS AND MISLEADING INSTRUCTIONS TO THE JURY ON THE ELEMENTS OF FELONIOUS ASSAULT, WHICH RENDERED THE VERDICT AND JUDGMENT VOID."
{¶ 20} In her third assignment of error, Appellant asserts that the trial court erred when it gave the jury instructions on the charge of felonious assault. Specifically, Appellant asserts it was error that the court instructed the jury on the charge of felonious assault pursuant to both subsections R.C. 2903.11(A)(1) and (A)(2). Appellant avers that, considering these jury instructions and, also, the fact that the indictment charged Appellant alternatively with both subsections, it is unclear from the verdict and journal entry whether Appellant was found guilty of subsection (A)(1) or (A)(2). We disagree.
{¶ 21} In the case at bar, Appellant failed to raise this objection to the jury instructions before the jury retired to consider its verdict and, pursuant to Crim.R. 30(A), has waived all but plain error. State v. Clay (Mar. 8, 2000), 10th Dist. No. 99AP-404. An error constitutes plain error if it is obvious and affects a substantial right. State v. Yarbrough (2002), 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 108. Moreover, an alleged error constitutes plain error if "`but for the error, the outcome of the trial clearly would have been otherwise.'" Id., quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
{¶ 22} "Indictments set in the alternative are not per se
unlawful." State v. Dye (Aug. 28, 1998), 5th Dist. No. 98CA19. Rather, "where a single offense may be committed in any one of two or more different ways, a count is not duplicitous which charges the commission of the offense conjunctively in two ways, provided there is no repugnancy between the ways charged." State v. Daniels (1959), 169 Ohio St. 87,103; see, also, State v. Martin (Dec. 6, 1996), 11th Dist. No. 95-L-139. Specifically, courts have upheld jury instructions and indictments that listed felonious assault in the alternative. See, e.g., State v. Harris
(Sept. 11, 1984), 10th Dist. No. 84AP-156.
{¶ 23} "A jury instruction should be a plain and unambiguous statement of the law as applicable to the case made before the jury by proof adduced." Clay, supra. Additionally, in order to uphold a conviction, evidence as to each material element of the crime charged must be proven beyond a reasonable doubt. State v. Washington (June 25, 1987), 10th Dist. No. 86AP-778.
{¶ 24} In the present case, as discussed with regard to the first and second assignments of error, there is evidence to support Appellant's conviction under either R.C. 2903.11(A)(1) or (A)(2). Further, with regard to the judgment entry, conviction under either subsection results in the same penalty under law. See, generally, State v. Hart (Aug. 16, 1989), 9th Dist. No. 13951. The trial court presented the jury with each of the essential elements of felonious assault under either alternative. In addition, the court instructed the jury with regard to the jury instructions and informed them that the objective was for the jury to reach an agreement on their decision. In light of these facts, Appellant's assigned error does not rise to the level of plain error. See, generally, Washington, supra; see, also, generally, Harris, supra.
 III.
{¶ 25} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, P.J. CONCURS., CARR, J. CONCURS IN JUDGMENT ONLY