This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Patricia Rector has appealed from an order of the Akron Municipal Court that found her guilty of failure to stop at a red light, in violation of Akron City Ordinance ("A.C.O.") 70.21(C). This Court affirms.
 I
{¶ 2} On January 22, 2002, Appellant was issued a citation for failing to stop at a red light. Appellant appeared in the Akron Municipal Court and entered a plea of "not guilty." The matter proceeded to trial before a magistrate, after which the magistrate recommended that Appellant be found guilty. Appellant filed objections to the magistrate's decision. The trial court thereafter overruled Appellant's objections, adopted the magistrate's decision, found Appellant guilty, and imposed a fine of $75 plus costs. Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One {¶ 3} "THE TRIAL COURT ERRED IN NOT GRANTING A REVERSAL TO MAGISTRATE'S DECISION BY FAILING TO APPLY THE CONTROLLING LAW TO THE EVIDENCE."
{¶ 4} In her first assignment of error, Appellant has contended that the trial court erred by failing to apply the applicable law to the facts of the case. Specifically, Appellant has contended that R.C. 4511.12
provides an exception to the duty to obey traffic control devices, and the trial court committed prejudicial error by failing to recognize this statutory exception.
{¶ 5} This Court reviews the interpretation and application of a statute de novo. Akron v. Frazier (2001), 142 Ohio App.3d 718, 721. "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute." Id., quoting State v. S.R. (1992),63 Ohio St.3d 590, 594. To ascertain the legislative intent, a court looks first to the language of the statute. Frazier,142 Ohio App.3d at 721.
{¶ 6} R.C. 4511.12 provides:
 {¶ 7} "No pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with this chapter, unless at the time otherwise directed by a police officer.
 {¶ 8} "No provision of this chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person."
{¶ 9} By its terms, the "exception" to the enforcement of R.C. Chapter 4511 that Appellant has invoked is limited to "provision[s] of this chapter for which signs are required[.]" (Emphasis added.) That the legislature did not use "signs" and "traffic control devices" interchangeably is evident from a comparison of the two paragraphs of R.C. 4511.12. Moreover, R.C. 4511.01(QQ) includes "signs" in the definition of "traffic control devices," but also includes in that definition "all flaggers, * * * signals, markings, and devices * * * for the purpose of regulating, warning, or guiding traffic[.]" Appellant did not argue in the trial court, and has not contended in this appeal, that her citation was related to any signs that were improperly positioned or insufficiently legible to be seen by an ordinarily observant person. Accordingly, the trial court did not err in failing to apply the exception set forth at R.C. 4511.12. Appellant's first assignment of error is without merit.
 Assignment of Error Number Two {¶ 10} "THE TRIAL COURT ERRED IN FAILING TO REVERSE MAGISTRATE'S DECISION BY NOT TAKING THE MANIFEST WEIGHT OF THE EVIDENCE RELATIVE TO THE AFOREMENTIONED CONTROLLING LAW THUS DEMONSTRATING THE FAILURE OF THE STATE TO PROVE ITS CASE `BEYOND A REASONABLE DOUBT.'"
{¶ 11} In her second assignment of error, Appellant has argued that her conviction was against the manifest weight of the evidence.
{¶ 12} In determining whether a conviction is against the manifest weight of the evidence, this Court must:
 {¶ 13} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
{¶ 14} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14, appeal not allowed (2000), 88 Ohio St.3d 1482. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 15} Appellant was convicted of failing to stop at a red light, in violation of A.C.O. 70.21(C)(1). That ordinance provides:
 {¶ 16} "Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown[.]"
{¶ 17} Many of the facts relevant to this case are undisputed. At approximately 4:10 p.m. on January 22, 2002, Appellant was leaving Our Lady of the Elms school in Akron. Appellant proceeded northbound on the exit road out of the school and approached the intersection of West Market Street and Twin Oaks Road. A traffic light governs the right of way at that intersection. Appellant testified that she came to a complete stop at the intersection, and observed that both the eastbound and westbound lanes of traffic on West Market Street were stopped. Appellant further stated that she perceived the light controlling her lane of traffic to be "bright green," so she advanced into the intersection with the intention of proceeding across West Market Street and continuing northbound on Twin Oaks Road. Once in the intersection, however, Appellant saw a vehicle traveling toward her in the westbound lane of West Market Street. Appellant later learned that the driver of this vehicle was Ms. Colleen Wernig. According to Appellant, both vehicles were advancing into the intersection from a complete stop, and so were not moving at a high rate of speed. Appellant testified that she swerved to the left to avoid the westbound vehicle as soon as she saw it, but Ms. Wernig's vehicle nevertheless struck the rear passenger side of Appellant's automobile.
{¶ 18} Appellant and Ms. Wernig agreed to move their cars to Twin Oaks Road to clear the intersection of West Market Street. Appellant testified that she then exited her vehicle and approached the driver of the first vehicle that was southbound on Twin Oaks Road, waiting to proceed through the intersection. Appellant averred that she asked this driver what happened and he told her that she went through a red light. Appellant stated that she replied "No, I didn't." Appellant testified that she next spoke with Ms. Wernig, and Ms. Wernig asked Appellant why she went through a red light. According to Appellant, she responded "I didn't." Finally, Appellant stated that the driver of the vehicle that was stopped behind Ms. Wernig at the intersection told her "I know you went through a red light, but I know you didn't know you went through a red light because I was watching you." Appellant and Ms. Wernig then agreed to move to a nearby parking lot to telephone the police and wait for an officer to arrive.
{¶ 19} Officer Wilkerson of the Akron Police Department arrived soon thereafter. Officer Wilkerson testified that in the parking lot, Appellant told him that the sun was reflecting off the traffic signal governing her lane of traffic, and that she went into the intersection because she thought the light was green. The officer also stated that Appellant completed a written statement describing the accident. During his testimony, Officer Wilkerson read the following from Appellant's written statement: "Vehicles on both left and right of the intersection were stopped. The sun reflecting from the back of me on the traffic light was showing bright green, as far as I could tell, I had a green light." Officer Wilkerson also testified that none of the other witnesses to the accident were still at the scene when he arrived, but Ms. Wernig gave him a telephone number of a witness who saw the accident. The Officer stated that he called this number from a cellular telephone in his patrol car, and the witness told him that Appellant ran the red light and that he would be willing to testify to that fact. Officer Wilkerson testified that, based on all the foregoing information, he determined that Appellant ran the red light and issued her a citation for violating A.C.O. 70.21(C).
{¶ 20} Ms. Wernig also testified at Appellant's trial. Ms Wernig stated that she was stopped at a red light in the westbound lane of West Market Street, and she proceeded into the intersection when the light controlling her lane of traffic turned green. Ms. Wernig testified that she saw Appellant's vehicle coming out of Our Lady of the Elms' parking lot when she was in the intersection, and that she braked and swerved in an unsuccessful attempt to avoid a collision. Ms. Wernig stated that she was "positive" that her light was green at the time she entered the intersection.
{¶ 21} Finally, Ms. Kaye Rowe and Appellant's husband each testified at the trial. Ms. Rowe stated that she was an employee of Our Lady of the Elms, and that other accidents had occurred at the intersection at the rate of "a couple a year." Ms. Rowe also testified that the school's principal had initiated a meeting with city officials to discuss problems the school was experiencing with the traffic light at the intersection, but she was unaware of any changes that the city made. Mr. Rector testified that he went to the intersection three days after Appellant's accident and looked at the traffic light. Mr. Rector stated that at that time, all of the lights on the signal looked like they were lit, but the green light appeared to be "slightly more illuminated." Mr. Rector stated that he returned to the intersection the following Monday at approximately the same time of day with a video recorder, and taped the operation of the traffic signal. The tape was introduced as evidence at the trial, and played for the court.
{¶ 22} After thoroughly reviewing the record, this Court cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice in finding Appellant guilty of violating A.C.O. 70.21(C). The evidence adduced at trial overwhelmingly demonstrated that Appellant went through the intersection in spite of a "steady red indication" in the traffic control device governing her lane of traffic. Appellant's second assignment of error is not well taken.
 III
{¶ 23} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J., BATCHELDER, J. CONCUR.