THE STATE OF OHIO, APPELLEE, *v.* OTTEN, APPELLANT.

(No. 2167 — Decided December 17, 1986.)

*Ronald L. Rehm,* assistant prosecuting attorney, for appellee.
*Ronald H. Janetzke,* for appellant Bill Otten.

MAHONEY, P.J. Defendant Otten appeals from his conviction for one count of criminal trespass, in violation of R.C. 2911.21(A)(4). We affirm.

### Facts
Otten is an employee of the American Federation of State, County and

Municipal Employees ("AFSCME"). AFSCME represents the employees of the Wayne County Care Center ("WCCC") in labor relations matters. A WCCC employee, Cindy Stouffer, was charged with abusing a WCCC resident, Delbert Hill, and Otten was assigned to represent Stouffer in the ensuing disciplinary action against her.

On the morning of January 9, 1986, Otten met with Stouffer to prepare for a pre-disciplinary hearing scheduled for that afternoon. During the course of that meeting, Otten was informed that Delbert Hill desired to make a statement on Stouffer's behalf.

During visiting hours that afternoon, Otten and Lowell Stouffer, Cynthia's husband, went to Hill's room at WCCC. Lydia Thompson, an LPN at WCCC, observed Otten and Lowell Stouffer enter Hill's room and immediately notified the Director of Nursing, Judy Potts. Potts told Otten and Lowell Stouffer to leave Hill's room. When Otten informed Potts that the men were authorized to be there, Potts immediately consulted the WCCC Administrative Assistant, Carol Van Pelt.

Van Pelt repeatedly ordered Otten to leave Hill's room. Otten questioned Van Pelt's authority and refused to leave. Ralph Linsalata, an employee of the Wayne County Commissioners, then escorted Otten from Hill's room.

The matter was tried to the court without a jury on February 20, 1986. In a judgment entry dated March 24, 1986, the trial court found Otten guilty of criminal trespass, in violation of R.C. 2911.21(A)(4). The trial court fined Otten $200 and sentenced him to serve two days in the Wayne County Jail.

## Assignments of Error

"The Lower Court [sic] erred by:

"1. Concluding that employees of WCCC were justified in telling Otten to leave Hill's room.

"2. Concluding that Otten failed to leave and should have immediately left the room of Delbert Hill upon being notified to do so.

"3. Finding that Otten acted negligently referencing R.C. 2901.22 (D)."

Although not specifically stated as such, these assignments of error appear to argue that Otten's conviction was against the manifest weight of the evidence and contrary to law. We do not agree.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717, paragraph three of the syllabus; *State* v. *Allen* (Aug. 27, 1986), Lorain App. Nos. 4019 and 4020, unreported. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Id.*

In Ohio, there are various acts which constitute the crime of criminal trespass. The propriety of Otten's initial entry into Hill's room is not in controversy. Otten was specifically convicted of violating R.C. 2911.21(A)(4), which provides:

"(A) No person, without privilege to do so, shall do any of the following:

"* * *

"(4) [Be] on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either."

Although not separately assigned as error, the bulk of Otten's brief ad-

dresses the question of whether Otten had a privilege to remain in Hill's room. R.C. 2901.01(L) defines "privilege" as "* * * an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity."

Otten contends that Hill requested a meeting with Otten and that this request conferred upon Otten a privilege to remain in Hill's room. R.C. 3721.13(A)(20)(c) grants residents of a "home," like WCCC, certain rights, including:

"(20) The right upon reasonable request to private and unrestricted communications with his family, social worker, and any other person, unless not medically advisable as documented in his medical record by the attending physician, except that communications with public officials or with his attorney or physician shall not be restricted. Private and unrestricted communications shall include, but are not limited to, the right to:

"* * *

"(c) Private visits at any reasonable hour."

This code section has been interpreted to confer such a privilege in some circumstances. See, e.g., State v. Hohman (1983), 14 Ohio App. 3d 142, 14 OBR 158, 470 N.E. 2d 162. However, the statute clearly limits a resident's private unrestricted visitation right to situations where a "reasonable request" has first been made. This requirement enables "home" officials to consult with a resident's physician prior to granting the request if there is any question regarding the medical advisability of the request.

There is no evidence in the record that Hill ever made a request to WCCC management for permission to visit with Otten. Two WCCC nurses aides, JoNell Fox and Janet Messenger, testified that Hill requested a meeting with Otten and that they relayed this information to Otten. However, this testimony was properly found by the trial court to be hearsay and was admitted into evidence for the limited purpose of establishing that Otten believed that Hill desired to see him. Both individuals admitted that they had not informed WCCC management of Otten's request.

The record is quite clear that Hill did not indicate to WCCC management that he had asked Otten to come, at the time that Otten was ordered to leave. Hill did not request that the meeting continue or in any way object to Otten being removed.

WCCC has a statutory duty to provide its residents with "adequate and appropriate medical treatment." R.C. 3721.13(A)(3). We agree with the trial court that this obligation must be balanced against a resident's right to unrestricted visitation under R.C. 3721.13(A)(20)(c).

Hill came to WCCC on December 31, 1985 from the cardiac unit at Wooster Community Hospital. Shortly thereafter, on January 3, 1986, Hill sustained injuries as a result of a fall. When Otten and Lowell Stouffer entered Hill's room, Lydia Thompson was concerned about Hill's health and informed Judy Potts of the situation. Judy Potts considered Hill's condition to be "critical." Carol Van Pelt said that Hill appeared "upset," "ashen" and "scared" to her when she entered his room. All of these individuals testified that Hill's health was their primary concern.

In light of these circumstances, WCCC's agents were justified in ordering Otten to leave Hill's room. Since Otten was under no privilege to remain, he should have left Hill's room when he was initially instructed to do so. The trial court found that Otten negligently failed to leave. We agree.

R.C. 2901.22(D) defines "criminal negligence" and provides:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

Judy Potts initially told Otten to leave Hill's room. Subsequently, Carol Van Pelt repeatedly ordered Otten to leave. This fact is corroborated by the testimony of Otten's own witness, Lowell Stouffer. Otten failed to leave until escorted from Hill's room by Ralph Linsalata. We find that Otten's failure to leave constituted a substantial lapse from due care under the circumstances.

### Assignment of Error IV

"The Lower Court [*sic*] erred by:

"[Imposing a] sentence which was excessive both in terms of the fine and time in the county jail."

The trial court sentenced Otten to serve two days in the Wayne County Jail and fined him $200. Criminal trespass is a misdemeanor of the fourth degree. R.C. 2911.21(D). The maximum penalty that may be imposed for committing a fourth degree misdemeanor is imprisonment for not more than thirty days and a fine of not more than $250. R.C. 2929.21.

An appellate court should not disturb sentencing decisions of a trial court unless there is a clear abuse of discretion. *Miamisburg* v. *Smith* (1982), 5 Ohio App. 3d 109, 5 OBR 225, 449 N.E. 2d 500. We find none here.

### Summary

Otten's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN and BAIRD, JJ., concur.