DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Robert Boston, appeals from the judgment of the Summit County Court of Common Pleas convicting him of possession of cocaine and sentencing him to three years in prison. We affirm.
 {¶ 2} Defendant was indicted on April 14, 2004, for one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a fourth degree felony, one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1), a third degree felony, and one count of possession of cocaine in violation of R.C. 2925.11, a second degree felony. Defendant entered a plea of not guilty to all three charges, and the case proceeded to a trial by jury. Prior to trial, the State dismissed the charges of trafficking in cocaine as contained in counts one and two of the indictment. Trial proceeded, and on September 16, 2005, the jury found Defendant guilty of possession of cocaine.
 {¶ 3} A sentencing hearing was held on September 30, 2005, after which the trial court ordered Defendant to pay a fine of $15,000, and sentenced him to three years in prison. Defendant now appeals, asserting three assignments of error for our review. We will address his assignments of error in due course.
 ASSIGNMENT OF ERROR III
"[Defendant's] conviction was against the manifest weight of the evidence."
 {¶ 4} In his final assignment of error, Defendant argues that his conviction was against the manifest weight of the evidence. Specifically, he claims that the State did not prove that he knowingly possessed the cocaine which formed the basis of his conviction.
 {¶ 5} When a defendant maintains that his conviction is against the manifest weight of the evidence:
"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
An appellate court should only invoke this power in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 6} Defendant in this case was convicted of possession of cocaine under R.C. 2925.11, which provides, in pertinent part, as follows: "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2901.22(B) defines "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 7} Defendant contends that the State failed to prove that the drugs belonged to him, and therefore failed to prove the essential elements of possession of a controlled substance. Possession however, need not be actual; it may be constructive.State v. Butler (1989), 42 Ohio St.3d 174, 175. Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. "While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession." State v. Robinson, 9th Dist. No. 04CA0066,2005-Ohio-2151, at ¶ 13.
 {¶ 8} Circumstantial evidence alone is sufficient to support the element of constructive possession. State v. Jenks (1991),61 Ohio St.3d 259, 273. In this case, circumstantial evidence does support the jury's conclusion that Defendant had constructive possession of the cocaine found at his residence.
 {¶ 9} Keith Meadows and Mark Hockman, both police officers with the Akron Police Department, testified at trial that they assisted in the execution of a search warrant on April 7, 2005, at 354 East Crosier Street in Akron. They went to the front door and knocked, asking the occupant to come out so that they could talk. The occupant declined to do so and closed and locked the door. Officer Meadows testified that he could hear movement inside of the house; Officer Hockman stated that he heard footsteps appearing to go upstairs. Thereupon, they radioed the narcotics detectives who had been positioned at the rear of the residence.
 {¶ 10} Between eight and ten narcotics detectives then "breached the rear door and made entry through the rear of the house[.]" Michael Scott, a sergeant in the narcotics bureau of the Akron Police department was the last one in the line of the officers who were entering the house. He stated that as the officers before him were entering, he saw a person come out through a door on the second floor of the house onto a porch. Sergeant Scott testified that the man was standing on the porch on the second floor with his hands in a "low, ready position," which in certain circumstances would indicate that a gun was in the person's hand. Sergeant Scott yelled to the man, whom he identified at trial as being the Defendant, to "get down or get back in the house." Defendant went back into the house where he was handcuffed outside of the upstairs bathroom. Sergeant Scott then directed a couple of the officers to go through all of the registers and air ducts in the house.
 {¶ 11} Officer Scott Williams of the Akron Police Department narcotics unit stated that he had been "told on arriving at the house [that] the suspect had been apprehended in the bathroom upstairs, so that's where [he] began [his] search." The only way for Defendant to have gotten to the second floor porch was through the bathroom, which was another reason why Officer Williams focused his search there. He testified that he and his colleagues "continued to search until [he] realized [that] the hot air vent was not screwed on, [it] just lifted off. As [he] lifted it off, [he] could see sitting on the ledge, before it drops down into the duct, [a] baggy with what appeared [to] him to be crack cocaine."
 {¶ 12} In addition to the crack cocaine, a search of Defendant's residence yielded $510 (which was on his person) and two scales. Special Agent Charles Turner testified that one of the scales he found was a postal scale, which he associated with the weighing of narcotics. The substance suspected of being cocaine was given to Robert Velten, a bureau of criminal investigation employee. Mr. Velten testified that he analyzed the substance, and conducted a test which indicated that cocaine base, otherwise known as crack cocaine, was present.
 {¶ 13} Defendant testified in his own behalf and admitted that he resided at 354 East Crozier Street for seven years. He further stated that he was the only adult living there. Defendant admitted that the two scales found during the search of his house were indeed his, and admitted that marijuana found in his coat belonged to him. Defendant asserted, however, that the cocaine found in his house did not belong to him, but rather that it belonged to his nephew who had been staying with him for a few days preceding his arrest. Defendant's nephew's father, his brother-in-law, testified that he had found crack cocaine belonging to his son at his own residence, and it was after that discovery that the nephew came to stay with Defendant.
 {¶ 14} Defendant argues that the trial court did not give enough credit to his version of the events, in which he claims that he did not possess the cocaine. However, when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the prosecution testimony was believed over the testimony of the Defendant, as in the instant case. See State v. Warren (1995),106 Ohio App.3d 753, 760. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. Wolery
(1976), 46 Ohio St.2d 316, 331.
 {¶ 15} "This Court will not overturn a judgment based solely on the fact that the [trier of fact] preferred one version of the testimony over the other." State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at 9, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. The evidence presented established that Defendant was seen on a porch in the second floor of his house after he had been notified that the police wanted to talk to him. The only way to get to the porch was through the second floor bathroom, which is where he was apprehended. Mere feet away from where Defendant was apprehended, narcotics detectives discovered crack cocaine. Defendant admitted that the house was his, and he was the only adult residing therein. Defendant had dominion and control over the drugs, and was seen moments before to be in the very room where they had been discovered.
 {¶ 16} The evidence persuades us that the trier of fact neither lost its way nor created a manifest miscarriage of justice in convicting Defendant of possession of cocaine. As such, we find that Defendant's conviction was not against the manifest weight of the evidence. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I
"The trial court committed reversible error when it admitted into evidence unfairly prejudicial evidence."
 ASSIGNMENT OF ERROR II
"Prosecutorial misconduct deprived [Defendant] of a fair trial, meriting reversal."
 {¶ 17} Defendant's first two assignments of error are inextricably bound and we will consider them together. In these assignments of error, Defendant argues that the trial court erred in admitting other acts evidence, and that the prosecutor's misconduct in introducing the other acts evidence deprived him of a fair trial. While we agree that the trial court erred and it would have been a better course of action to have avoided any mention of prior misconduct, we find that the error was harmless and Defendant did not suffer any prejudice as a result. Thus, we affirm Defendant's sentence as imposed by the trial court.
 {¶ 18} A trial court enjoys broad discretion in determining the admissibility of evidence and its decision should not be reversed absent an abuse of discretion that has caused Defendant to suffer material prejudice. State v. Davis (August 21, 1991), 9th Dist. No. 1952, unreported at 3, citing State v. Hymore
(1967), 9 Ohio St. 2d 122, 128. Thus, without a showing of material prejudice, the trial court's decision, allowing certain evidence to come in, must stand.
 {¶ 19} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, an appellate court determines if the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. State v. Smith (1984), 14 Ohio St.3d 13, 14. The defendant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 78-79.
 {¶ 20} Consequently, without a showing that Defendant's trial would have come out differently had the prosecutor not introduced the complained of evidence and the trial court not admitted such evidence, we cannot reverse the decision of the trial court convicting Defendant of possession of cocaine.
 {¶ 21} The four "other bad acts" references which Defendant claims were improperly admitted, and formed the basis of his prosecutorial misconduct arguments are the following: First, Akron Police Officer, Kandy Schoaff, testified that Defendant had been asked if he sold or trafficked in drugs, to which Defendant responded to the officer that he had not. As the officer admitted in trial that Defendant denied that he had sold or trafficked drugs, we can see no prejudicial effect of the above comment.
 {¶ 22} Second, when asked why he was seeking a search warrant for Defendant's residence, Detective Glenn Payne responded that the police department had an ongoing drug investigation; there were "three controlled buys we had where [Defendant] was in that house." The officer, however, never indicated that Defendant was involved in the drug buys, or even that he knew that they had occurred. While it would have been better practice to have refrained from mention of the controlled buys, in light of the fact that Defendant was not implicated in the statement, we do not find that he was prejudiced.
 {¶ 23} Third, a sum of $510 in cash was found in Defendant's pocket when he was apprehended, which came up during trial. Detective Payne was asked whether or not he was surprised that Defendant had such a large sum of money on his person, to which he responded that he was not. Detective Payne testified that "[t]he people we have come across and do search warrants in the house have substantially more money on them than just $510. Most people, when they are involved in drugs, keep a large [amount of] cash." We do not find the above statement prejudicial. In fact, the opposite appears to be true. Detective Payne essentially stated that people who are involved in drugs typically have much more cash on them than Defendant, which, if anything, was helpful to Defendant's case.
 {¶ 24} Finally, Detective Payne testified that no firearms were found in the house. In answering a question presented to him, the detective stated "[based on [Defendant's] previous arrest and" to which an objection was entered and sustained. Therefore, the evidence was not admitted. Additionally, we find that the testimony regarding Defendant's prior arrests to be harmless because Defendant himself testified about his prior arrests and convictions.
 {¶ 25} Defendant has failed to demonstrate how the above comments prejudiced any of his substantial rights or that the proceeding would have come out differently had the statements been excluded by the trial court. Accordingly, we find that any error committed by the trial court was harmless, and we overrule Defendant's first and second assignments of error.
 {¶ 26} Defendant's three assignments of error are overruled and the decision of the Summit County Court of Common Please is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Whitmore, J. Concur.