DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant, Joseph L. Fletcher III, appeals from his conviction in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On January 17, 2006, after a five-day trial, the jury convicted Defendant of one count each of trafficking in cocaine in violation of R.C. 2925.03(A)(2), a felony of the third degree; possession of cocaine in violation of R.C. 2925.11(A), a felony of the third degree; trafficking in marijuana in violation of R.C. 2925.03(A)(2), a felony of the fifth degree; possession of criminal tools in violation of R.C.2923.24, a felony of the fifth degree; and possession of marijuana in violation of R.C. 2925.11(A), a minor misdemeanor. On January 20, 2006, after further deliberations, the jury returned its verdict of guilty on one count of participating in criminal gang activity in violation of R.C. 2923.42(A), a felony of the second degree. Each of these convictions arose from an arrest made on the evening of October 23, 2005.
 I. Facts {¶ 3} For ease of discussion, we will first set out the facts as they were presented to the jury at trial. The prosecution offered the testimony of twelve police officers, one chemist from the Ohio Bureau of Criminal Identification ("BCI"), and one employee of the Summit County Sheriff's Office who was responsible for maintaining call records from the Summit County Jail and who could authenticate Defendant's recorded phone calls from the jail. Two of the officers who testified were the arresting officers on October 23, 2005, and two were the officers called to assist in the arrest.
 {¶ 4} The jury heard testimony from the arresting and assisting officers as follows: The arresting officers, Boss and Mobley, followed a red Chevy Camaro down V. Odom Boulevard in Akron, around 7:00 p.m. The car, which carried a driver, a front-seat passenger and a rear-seat passenger, made an illegal turn onto East Avenue, at which point the officers began to follow the car and to initiate a traffic stop. When they turned on the cruiser's overhead lights, the Camaro continued down the road and made a second illegal turn, this time onto Longview. The officers turned on the siren, and the Camaro proceeded two more blocks and made a final turn, at which point Officer Boss noticed the driver's side door opening. The driver then jumped from the vehicle while it was moving. Officer Mobley, the passenger in the police cruiser, exited the cruiser to pursue the driver, while Officer Boss continued to follow and observe the Camaro, which came to rest in the middle of the street.
 {¶ 5} Officer Boss noticed "a lot of furtive movement" in the Camaro as it was coming to rest. As he described it, the passenger in the back seat was "all over the back seat", and, as the car slowed to a stop, both the back seat and front seat passengers moved toward the center of the car, where Officer Boss later determined there was a console compartment within reach of both passengers. Officer Boss ordered the passengers out of the car, and told them to place their hands on the roof of the car, which they did not immediately do.
 {¶ 6} Officers Miller and Best soon arrived to assist Officers Boss and Mobley: Officer Miller joined Officer Mobley in looking for the driver of the Camaro, while Officer Best helped Officer Boss secure the passengers. Defendant was riding in the back seat of the Camaro, and the officers removed him and put him in handcuffs. When Officer Boss searched the Camaro, he found in the center console a box of plastic baggies containing empty baggies, a digital scale, thirty baggies of what appeared to be crack cocaine and five baggies of what appeared to be marijuana. The officers placed Defendant and the other passenger under arrest. Officers Mobley and Miller were unable to find the driver of the Camaro, and returned to the scene of the traffic stop. Because a crowd had gathered around the scene, the officers drove Defendant and the other passenger of the Camaro to an empty parking lot nearby so that they could wait for the van to take the arrestees to the Summit County Jail.
 {¶ 7} Officers Mobley, Miller and Best testified that, as they waited for the van, Defendant told them that the drugs were not his, and that they would never catch him with drugs on his person because he had "soldiers" to do the work for him. Throughout the stop and arrest, Defendant was laughing. There is evidence in the trial transcript that Defendant was also laughing and showing defiance throughout the trial.
 {¶ 8} The BCI chemist, Michael Velten ("Velten"), testified that he had tested one of the substances removed from the Camaro, and it was 6.53 grams of crack cocaine. An officer with the Street Narcotics Uniform Detail, Donny Williams, testified that he had tested the other substance and it was 8.3 grams of marijuana. He testified that the drugs were packaged for sale, since there was a scale in the box, the drugs were individually wrapped in small quantities in baggies, and there were extra baggies on hand. Officer Williams also testified that, based on his training and experience, drug dealers would not keep their drugs on their person. Instead, they would either stash them in various places so that the police do not find them actually possessing the drugs, or they would have others carry the drugs for them. Because juveniles face less severe penalties for drug possession than do adults, juveniles would ordinarily carry the drugs. The juveniles performing this role in gang settings are often referred to as "soldiers".
 {¶ 9} After the testimony regarding the initial arrest of Defendant and the subsequent investigation, several Akron patrol officers assigned to Defendant's neighborhood testified that they almost always saw Defendant near the intersection of Manchester Road and East Avenue, specifically at the corner of Thornton Street and Laurel Avenue, a corner where drug dealing often occurred. The officers testified that Defendant frequently told them about his "soldiers", because of whom the police would never find him "dirty" (or with drugs on his person). All of the officers who testified and had interacted with Defendant recalled that Defendant had openly identified himself as a member of the "V-NOT" gang, and specifically as a member of its subset, the "Chesty Bloc" gang, whose "territory" centered around the intersection of Manchester Road and East Avenue. The officers regularly saw Defendant at gang fights that erupted in the neighborhood. They had confiscated gang apparel from him in the past, such as a black shirt bearing the "V-NOT" logo applied in white shoe polish. They had seen him make the sign for the "V-NOT" gang. Several officers testified that Defendant bragged about having large quantities of cash, though he had told them that he was unemployed. One officer also testified that he had confiscated a shirt with gang symbols from Defendant at a festival in downtown Akron, and, when the officer offered Defendant a property receipt, Defendant pulled out a large bundle of cash and announced that he could just buy himself another shirt.
 {¶ 10} The prosecution produced certified copies of criminal convictions for several young men in Defendant's neighborhood with whom officers observed Defendant associating. In addition, the prosecution produced recorded phone calls from the Summit County Jail in which Defendant spoke specifically about the arrests of some of these young men, as well as about various activities, including robbery and drug dealing, in which he had engaged or intended to engage upon his release. He also was heard in the recording to say that the other passenger in the car on the night of Defendant's arrest should "stick to the story," clearly intending that he should continue to insist that the drugs were not Defendant's.
 {¶ 11} Defendant timely appeals, raising four assignments of error. For ease of discussion, we will address them in a different order than that set forth by Defendant.
 II. SECOND ASSIGNMENT OF ERROR "[Defendant's] conviction was against the manifest weight of the evidence."
 THIRD ASSIGNMENT OF ERROR "The trial court committed reversible error when it denied the [Defendant's] motion for a judgment of acquittal."
 {¶ 12} In his second and third assignments of error, Defendant contends that the evidence presented by the prosecution was insufficient to sustain a conviction, and that the jury's verdict was against the manifest weight of the evidence. In his argument, Defendant only addresses the sufficiency and manifest weight of the evidence regarding his conviction for possession of marijuana, possession of cocaine, and possessing criminal tools. We accordingly confine our discussion to those counts Defendant argues. See Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349, 18673, at 8. (Holding that "[i]f an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.")
 {¶ 13} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach "different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, citingState v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, at 386.
 {¶ 14} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. CA19600, at *1, citing Thompkins, at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 15} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 16} Defendant was convicted for violation of two statutes in the counts he addresses in his brief. R.C. 2925.11(A), governing the charges of possession of marijuana and possession of cocaine, states "No person shall knowingly obtain, possess, or use a controlled substance." The statute continues in pertinent part as follows:
 "(C)(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:
 "(a) Except as otherwise provided in division (C)(3)(b), (c), (d), (e), or (f) of this section, possession of marihuana is a minor misdemeanor.
 * * *
 "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
 * * *
 "(c) If the amount of the drug involved * * * equals or exceeds five grams but is less than ten grams of crack cocaine, possession of cocaine is a felony of the third degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree."
 {¶ 17} "Possession" is defined in R.C. 2925.01(K) as "having control over a thing or substance, but [possession] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.22(B) states that a person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 18} In addition, based upon the presence of the digital scale in the center console of the Camaro, Defendant was charged with violating the statute regarding possession of criminal tools, R.C. 2923.24(A), which states that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 19} For each of the three charges, possession may be either actual or constructive. See State v. Figueroa, 9th Dist. No. 22208,2005-Ohio-1132, at *2, citing State v. Butler (1989), 42 Ohio St.3d 174,175, 538 N.E.2d 98; State v. Bewsey (June 16, 1993), 9th Dist. No. 15857, at *5. "Constructive possession occurs when a person knowingly exercises dominion or control over the item, even without physical possession." Figueroa, at ¶ 8, citing State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362.
 {¶ 20} In the specific context of drug possession, "constructive possession may be inferred from the drugs' presence in a usable form and in close proximity to the defendant." Figueroa, at ¶ 8, citing State v.Thomas, 9th Dist. No. 21251, 2003-Ohio-1479, at ¶ 11. "`Possession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others.'" Figueroa, at ¶ 8, quoting State v. Alicea (Oct. 18, 2001), 8th Dist. No. 78940, at *17. "Circumstantial evidence is sufficient to support the element of constructive possession." State v. Collins, 9th Dist. No. 23005,2006-Ohio-4722, at ¶ 11, citing State v. Jenks (1991),61 Ohio St.3d 259, 272-73, 574 N.E.2d 492. Similarly, "[a]ctual physical possession is not a prerequisite for a conviction of possession of criminal tools if a defendant was in constructive possession." Bewsey, at *5.
 {¶ 21} The prosecution provided testimony from the arresting officers that they saw a great deal of "furtive movement" in the backseat of the Camaro as they attempted to pull it over, and that Defendant was moving around in the backseat and leaning towards the center console where the drugs were later found. Clearly, Defendant could access the center console of the car from the backseat. The chemist and officer who tested the substances found in the console testified that the substances were crack cocaine and marijuana, and that they were packaged for resale, as was evident from the presence of the digital scale.
 {¶ 22} The defense tried to portray the activity in the car as Defendant's frantic attempt to stop the car after the driver jumped out. However, this court has repeatedly stated that "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." Akron v. Portman, 9th Dist. No. 22921, 2006-Ohio-2856, at ¶ 13, quoting State v.Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *7; State v.Suttles (Nov. 15, 2000), 9th Dist. No. 19453, at *4. Furthermore, "upon presentation of conflicting testimony, `a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony.'" Figueroa, at ¶ 7, quotingState v. Gilliam (Aug.12, 1998), 9th Dist. No. 97CA006757, at *2.
 {¶ 23} There is no evidence to which Defendant can point that weighs heavily in his favor. See Otten, at 340. Instead, the jury could reasonably interpret the flurry of activity in the car prior to the stop as Defendant's attempt to hide the drugs and scale, which would allow the jury to conclude that he had control over those items. Especially in light of Defendant's repeated statements to the police, both before and on the night of the arrest, that he would never be caught with drugs on his person because he had others to carry them for him, the jury could also have concluded that Defendant was aware of the drugs and scale in the car, and that he constructively possessed those drugs by being in close enough proximity that he could easily control them. See State v.Boston, 9th Dist. No. 22947, 2006-Ohio-2967, at ¶ 7, quoting State v.Robinson, 9th Dist. No. 04CA0066, 2005-Ohio-2151, at ¶ 13. ("`While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession.'") We therefore find that the jury did not lose its way in finding Defendant guilty of possession of marijuana, possession of cocaine, and possessing criminal tools, and the conviction on each of those counts is not against the manifest weight of the evidence.
 {¶ 24} As this determination has disposed of Defendant's claims with respect to the weight of the evidence, we similarly dispose of Defendant's claims regarding the sufficiency of the evidence. SeeRoberts, at *2. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Defendant's second and third assignments of error are overruled.
 FIRST ASSIGNMENT OF ERROR "Prosecutorial misconduct deprived [Defendant] of a fair trial, meriting reversal."
 {¶ 25} In his first assignment of error, Defendant contends that the prosecutor made three statements during closing argument that amounted to misconduct and deprived him of a fair trial, and argues that his conviction should therefore be reversed.
 {¶ 26} "`The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" State v.Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, at ¶ 62, quoting State v.Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. Generally, a prosecutor is allowed wide latitude in the closing argument to present his most convincing positions to the jury, and "[t]he jury should be given credit for sufficient common sense and sound judgment" to weigh the prosecutor's words appropriately. State v. Woodards (1966),6 Ohio St.2d 14, 26, 215 N.E.2d 568; see, also, State v. Smith, 9th Dist. Nos. 01CA0039, 01CA0055, 2002-Ohio-4402, at ¶ 96. "Significantly, prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial." State v. Smith, 2002-Ohio-4402, at ¶ 96, citing State v. Maurer (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768. Defendant must demonstrate that "but for the prosecutor's misconduct, the result of the proceeding would have been different." State v.Burgos, 9th Dist. No. 05CA008808, 2006-Ohio-4305, at ¶ 39, citingState v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47.
 {¶ 27} Defendant objects to the following three statements by the prosecutor in closing argument:
 "The police know he has money, he has hustled money, in fact, made a twenty-five hundred dollar bond and made another $ 500 bond and then found out he still couldn't get out [of jail]. That's a lot of money, $ 3000, for a guy that doesn't work[.]" [no objection]
 "Mr. Fletcher wants you to think that someone else had control over those drugs and the authority over those drugs[.]"
 "And at the very least if you don't agree that he had the ability to exercise dominion and control over these items, at the very least I think we can agree that he is an accomplice in trafficking, that by not giving up information about the driver-"
 {¶ 28} While Defendant did object to the second and third of these statements at trial, he did not object to the first. "When a defendant fails to object to alleged prosecutorial misconduct, he waives all but plain error." Burgos, at ¶ 38, citing State v. Smith, 97 Ohio St.3d 367,2002-Ohio-6659, at ¶ 45. "`To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings.'"Burgos, at ¶ 28, quoting State v. Tichon (1995), 102 Ohio App.3d 758,767, 658 N.E.2d 16. The purpose of the plain error doctrine is to avoid a manifest miscarriage of justice. State v. Bray, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12.
 {¶ 29} The prosecutor's statement regarding Defendant's ability to post bond does not amount to plain error, and Defendant has waived everything less than plain error by his failure to object to the statement during the trial. The jury heard ample evidence about Defendant's lack of employment, as well as his claims to having stores of money and his flashing a roll of bills at a police officer. This statement, while it does comment upon evidence not introduced during trial, did not deprive Defendant of a fair trial.
 {¶ 30} Defendant did object to the other two statements he now raises, but we find that they do not constitute error. Defendant contends that these statements amount to a comment on his decision not to testify, and that his Fifth Amendment rights were therefore violated. While it is true that a prosecutor may not comment on a defendant's refusal to testify, "isolated remarks by a prosecutor should not be taken out of context and given their most damaging interpretation." State v.Smith, 2002-Ohio-4402, at ¶ 98, citing State v. Twyford (2002),94 Ohio St.3d 340, 355, 763 N.E.2d 122. "In determining whether a defendant's Fifth Amendment rights were violated, this court must consider `whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" (Internal citations omitted.)State v. Smith, 2002-Ohio-4402, at ¶ 98, quoting State v.Twyford, 94 Ohio St.3d at 355.
 {¶ 31} We find that the prosecutor's comments in this case would not lead the jury to conclude that the prosecutor was commenting on Defendant's failure to testify. First, the prosecutor could have made the statements regardless of Defendant's decision to testify, since the statement did not implicitly or explicitly reference Defendant's refusal to testify. See State v. Smith, 2002-Ohio-4402, at ¶ 99. Second, the prosecutor's reference to Defendant's wanting the jury to believe his story was perfectly legitimate, since Defendant's attorneys attempted to paint a picture, in opening statement and throughout the trial, that Defendant was innocent. The statement by the prosecutor could just as easily be understood to refer to Defendant's statements to the police on the night of the arrest, when he chose not to remain silent. Therefore, these statements did not constitute error.
 {¶ 32} However, even if the prosecutor's statements did constitute error, the record shows beyond a reasonable doubt that Defendant would have been convicted on all counts even without those statements, given the volume of evidence produced during the trial supporting the jury's verdict. Moreoever, the judge issued a cautionary instruction to the jury during the prosecutor's closing argument and immediately upon defense counsel's objection to these statements, saying, "I'm telling you what they say is not evidence, nor an instruction on the law." SeeState v. Wade, 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, at ¶ 51. Because the court gave a curative instruction, and because Defendant would have been convicted without the prosecutor's statements, even if these statements constituted misconduct, Defendant was not denied a fair trial.
 {¶ 33} Defendant has waived objection to the first statement he identifies, since he failed to object during trial. The other two statements did not deprive him of a fair trial. Therefore, Defendant's first assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR "The trial court committed reversible error when it denied [Defendant] his constitutional rights under the Sixth Amendment Confrontation Clause by admitting the hearsay statements relating to alleged gang involvement over the objection of counsel."
 {¶ 34} In this fourth assignment of error, Defendant contends that his Sixth Amendment rights were violated when the court permitted what Defendant identifies as hearsay testimony. Defendant points to the testimony of two specific officers, namely Officer Mobley and Officer Schismenos, who testified regarding their training and experience in dealing with gangs in Akron, and specifically with the V-NOT gang.
 {¶ 35} In setting forth his argument, Defendant carefully explains the United States Supreme Court's holding in Crawford v. Washington (2004),541 U.S. 36, 124 S.Ct. 1354, regarding the inadmissibility of statements described as testimonial hearsay. He then calls the court's attention to a motion in limine in the trial court, in which he objected to the admission of testimonial evidence offered by prosecution witnesses on the grounds of hearsay.
 {¶ 36} However, in the body of the argument for this assignment of error, Defendant identifies no specific testimony that he considers to be hearsay. Instead, he merely identifies the nearly fifty-five pages of trial transcript recording the testimony of the two officers, and objects to any testimony they offered that could be considered testimonial hearsay. At no point does he identify specific testimony to which he objects.
 {¶ 37} App.R. 16 provides as follows:
 "The appellant shall include in its brief * * *:
 "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected;
 * * *
 "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.)
"`[I]t is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.'" McPherson v. Goodyear Tire Rubber Co., 9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 31, quotingState v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M. It is not the duty of the court to develop arguments left undeveloped by Defendant. SeeMcPherson, at ¶ 31. "This court may disregard * * * assignments of error if the appellant fails to identify the relevant portions of the record from Court of Appeals of Ohio, Ninth Judicial District which the errors are based." McPherson, at ¶ 31. See, also, Smith v. City of AkronHous. Appeals Bd. of Dept. of Pub. Health, 9th Dist. No. 21103, 2003-Ohio-93.
 {¶ 38} While Defendant has pointed to large portions of the record in which he claims errors are reflected, he has not identified those errors. He explained that the officers' testimony about their training and experience made them appear to be experts in the jurors' eyes even though the prosecution did not try to proffer them to the court as experts, and he argued that the general testimony they offered regarding gang activity amounted to hearsay. However, he has not specified how either of these categories of testimony amounts to testimonial hearsay and a violation of the rule in Crawford. He has also failed to draw the court's attention to particular testimony that violated the prohibition against testimonial hearsay.
 {¶ 39} We find that Defendant has failed to carry his burden of establishing that the trial court erred in admitting the testimony of Officers Mobley and Schismenos, in that he has failed to identify specifically any errors in the record. Therefore, his fourth assignment of error is overruled.
 {¶ 40} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.