DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Joseph Kracker, appeals his convictions in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On May 16, 2007, members of the Akron Police Department and an agent of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms Explosives stopped a red Honda Civic on Johnson Street in Akron. Angela Preston, one of the passengers, had outstanding misdemeanor warrants. Defendant was the driver. Police discovered baggies of methamphetamine and marijuana on the floor of the car at Defendant's feet. The officers searched the car and found several components used to manufacture methamphetamine, including a gasoline can in the back of the car that was emitting puffs of smoke.
 {¶ 3} Defendant was indicted on charges of illegal manufacture of drugs in violation of R.C. 2925.04(A), a felony of the second degree; illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the third degree; *Page 2 
aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree; and possession of marijuana in violation of R.C. 2925.11(A), a minor misdemeanor. On July 31, 2007, a supplemental indictment charged Defendant with two additional counts each of illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs. The supplemental indictments charged that each crime was committed in the vicinity of a juvenile and that Defendant had previously been convicted of violating R.C. 2925.04(A), R.C. 2919.22(B)(6), or R.C. 2925.041.
 {¶ 4} Following a jury trial, Defendant was found guilty of all charges. The trial court sentenced him to three concurrent six-year prison terms for the charges of illegal manufacture of drugs; three concurrent five-year prison terms for the charges of illegal assembly or possession of chemicals for the manufacture of drugs; and a one-year prison term for the charge of aggravated possession of marijuana. The trial court ordered all prison terms to be served concurrently, for an aggregate sentence of six years in prison. The trial court also ordered Defendant to pay a $100 fine for the conviction of possession of marijuana and imposed substantial fines in addition to the prison terms for his other convictions. Defendant timely appealed, raising three assignments of error.
 ASSIGNMENT OF ERROR I "[Defendant's] convictions for illegal manufacturing of drugs as well as illegal assembly or possession of chemicals for the manufacture of drugs were against the manifest weight of the evidence."
 {¶ 5} Defendant's first assignment of error argues that his convictions for illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs were against the manifest weight of the evidence. "A manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. *Page 3 
No. 19600, at *1, citing State v. Thompkins, 78 Ohio St.3d 380, 390
(Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, this Court:
 "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 6} R.C. 2925.04(A) provides that "[n]o person shall knowingly * * * manufacture or otherwise engage in any part of the production of a controlled substance." When the manufacture or production of methamphetamine is involved, violations of R.C. 2925.04 are felonies of the second degree. R.C. 2925.04(C)(3)(a). A violation committed within the vicinity of a juvenile is a felony of the first degree. R.C. 2925.04(C)(3)(b). In both instances, a previous conviction for violating R.C. 2925.04(A), R.C. 2925.041, or R.C. 2019.22(B)(6) results in mandatory heightened sentences. R.C. 2924.04(C)(3).
 {¶ 7} R.C. 2925.041 provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." A defendant need not possess all of the chemicals necessary to manufacture a controlled substance for a violation to occur:
 "In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section." R.C. 2925.041(B). *Page 4 
Violations of R.C. 2925.041(A) are felonies of third degree. R.C. 2925.041(C). When an offense is committed in the vicinity of a juvenile, however, it is a felony of the second degree. Id. A prison term is mandatory when the violation involves the manufacture of methamphetamine, and as with violations of R.C. 2925.04(A), the mandatory sentence is heightened when the offender has a prior conviction for violating R.C. 2925.04(A), R.C. 2925.041, or R.C. 2019.22(B)(6). R.C. 2925.041(C)(2).
 {¶ 8} With respect to both R.C. 2925.04 and R.C. 2925.041, to "`[m]anufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2025.01(J). As R.C. 2925.01(BB) also explains:
 "An offense is `committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense."
 {¶ 9} Agent Chuck Turner testified that on May 16, 2007, he established surveillance with Akron Police of a home owned by Angela Preston at 502 Hammel Street. Agent Turner testified that he identified Ms. Preston, who had outstanding misdemeanor warrants, as she entered the house with a small child. According to Agent Turner, Ms. Preston soon left the house without the child and got into a red Honda Civic that was parked in the driveway of the residence. Agent Turner pursued the car in his unmarked vehicle and radioed for the assistance of a marked unit. Agent Turner noted that a passenger in the backseat of the car made "furtive movements" when he activated his concealed overhead lights. *Page 5 
 {¶ 10} Agent Turner testified that during the stop all of the occupants were removed from the car and a search commenced. Officers identified Defendant as the driver of the vehicle, which had three other occupants including Ms. Preston. A search of the car led to the discovery of small packets of methamphetamine and marijuana on the floor near the driver's seat; a tin containing methamphetamine that was located in the backseat; a coffee filter containing residue of red phosphorus in the center console; and a large bottle of acetone, which was found in Ms. Preston's purse. Agent Turner also testified that officers found a gas can in the back of the car that was emitting white smoke, and Agent Turner identified this as, from his experience, a "homemade-type device that's used to manufacture methamphetamine * * * an active hydrochloric acid generator." On cross-examination, Agent Turner summarized the process through which a gas can is converted into a generator and testified that no tubing was found with the gas can in the back of the car. He also testified that once the gas can was found, officers "backed off and did not conduct any further search of the area.
 {¶ 11} Shawn Brown, a narcotics detective with the Akron Police Department, worked with Agent Turner on the day in question. Detective Brown explained the dangers inherent in cleaning up methamphetamine lab sites and the procedures that must be followed in order to comply with federal regulations. He also described the process through which methamphetamine is manufactured and the component chemicals which, according to Detective Brown, include pseudoephedrine, acetone, red phosphorus — which is frequently obtained from matches — and acetone. Detective Brown described in detail the operation of a typical homemade generator that is used in the process of manufacturing methamphetamine.
 {¶ 12} Detective Brown testified that after receiving specific information that indicated methamphetamine activity at Ms. Preston's home, he established surveillance with Agent Turner *Page 6 
on May 16. He also described the stop and recalled that he found a "generator" in the back of the car. Like Agent Turner, Detective Brown noted that gas can was smoking, but Detective Brown described it as "a little puff, puff, puff and opined that the generator was not performing normally. Detective Brown testified that, based on his experience in methamphetamine interdiction, he knew what the gas can was by the odor that it omitted. He also testified that he was able to identify a large bottle of clear liquid that was found in Ms. Preston's purse as acetone by its smell and appearance. Detective Brown conceded that further testing was not done on most of the items found in the vehicle, but explained that the reason was the restrictive protocol due to the presence of dangerous chemicals. Detective Brown obtained a search warrant for Ms. Preston's residence. He testified that officers entered the house by force after hearing footsteps inside. Once inside, the officers found a "small amount" of methamphetamine in the kitchen and assorted items of drug paraphernalia. Detective Brown testified that there was no indication that a methamphetamine lab had been active in the home.
 {¶ 13} Sergeant Michael Stott testified that he was working with Detective Brown on May 16, but that he had limited involvement in the stop and search of the red Civic. Instead, Sergeant Stott testified that he returned to Ms. Preston's home to secure the house after learning that a young child had been left behind at the location of a suspected methamphetamine lab. Sergeant Stott testified that he saw a small child coming in and out of the residence and an adult male on the front porch. The man, identified as James Brice, ran into the house and slammed the door when he realized that law enforcement officers were on the scene. Sergeant Stott also testified that he interviewed two other individuals who were seen leaving the residence.
 {¶ 14} Several others who were charged with drug-related crimes as a result of this incident also testified on behalf of the State. Angela Preston testified that she was in a *Page 7 
relationship with Defendant at the time. She recalled that Defendant lived with his mother, but frequently stayed overnight at the house on Hammel Street that she shared with her son, who was three years of age at the time. Ms. Preston testified that on May 16, 2007, many people were "in-and-out" of her house and that she "snorted" methamphetamine with them in the kitchen. According to Ms. Preston, Defendant was part of this group. She testified that Defendant drove to her house in the red Honda Civic, which he borrowed from a friend when his own vehicle broke down. Ms. Preston recalled that she got into the vehicle with Defendant and two other individuals and that the three men planned to go to "a garage" at Hunter's Lake to cook methamphetamine after dropping her off at work. She testified that Defendant gave her a large bottle of liquid before they left her house, but that she could not identify it. She recalled that Defendant asked James Brice, who was also at her residence, to buy matches for him. Ms. Preston testified that she did not see a gas can, coffee filters, or red phosphorus in the car and that she did not see smoke coming from the vehicle. She also stated that her son had been within one hundred feet of the car while it was parked in her driveway.
 {¶ 15} Ms. Preston acknowledged, however, that she did not know "for a fact" that Defendant manufactured methamphetamine at Hunter's Lake. She admitted that she had been charged as a result of this incident and that her son had been removed from her home as result. On cross-examination, Ms. Preston also acknowledged that she had never seen Defendant cook methamphetamine in her home or at Hunter's Lake.
 {¶ 16} James Brice, another co-defendant, testified that he was at Ms. Preston's residence on May 16 and that he used marijuana and methamphetamine during the day. He recalled that the red Honda Civic was parked outside the house when he arrived and testified that Defendant had borrowed the car when he wrecked his own. He also stated that Ms. Preston's *Page 8 
son was within one hundred feet of the car at times. Mr. Brice testified that Ms. Preston asked him to watch her son when Ms. Preston left. He testified that Defendant gave him $140 to purchase "one case" of matches, and that he understood that Defendant needed the matches to manufacture methamphetamine. Mr. Brice testified that instead of buying the matches himself, he passed the money on to two other individuals with instructions.
 {¶ 17} Hollis Frost testified that he took the money from Mr. Brice with instructions to purchase matches. He testified that he had not met Ms. Preston or Defendant before May 16, 2007, and that he went to Ms. Preston's home to "score * * * some meth" for his girlfriend. Mr. Frost recalled that he and his girlfriend were stopped by the police before they completed the purchase. Mr. Frost acknowledged that he had also been charged in this case, but that he pled guilty and enrolled in a drug intervention program.
 {¶ 18} Although the police did not catch Defendant red-handed in the process of preparing methamphetamine, the evidence at trial demonstrated that Defendant engaged in components of the production of methamphetamine and activities incident to production and that he was in the possession of chemicals that form a necessary chain in the production of methamphetamine. The testimony of Ms. Preston and Mr. Brice also indicated that Defendant did so within one hundred feet of her three-year-old son. Having reviewed the evidence in this case, along with the reasonable inferences that can be drawn therefrom, this Court concludes that Defendant's convictions for illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs are not against the manifest weight of the evidence. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "[Defendant's] convictions for aggravated possession of drugs and possession of marijuana were against the manifest weight of the evidence." *Page 9 
 {¶ 19} Defendant has also argued that his convictions for aggravated possession of drugs and possession of marijuana are against the manifest weight of the evidence. R.C. 2925.11(A), which prohibits possession of drugs, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Defendant was convicted of possession of marijuana in an amount that renders the offense a minor misdemeanor pursuant to R.C. 2925.11(C)(2)(a). He was also convicted of possession of methamphetamine, which is a schedule II controlled substance for which possession is a felony of the fifth degree under the circumstances of this case. See R.C. 2925.11(C)(1)(a); R.C. 3719.41(C).
 {¶ 20} Possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). It may be either actual or constructive. State v. Kobi (1997), 122 Ohio App.3d 160, 174, citingState v. Haynes (1971), 25 Ohio St.2d 264, 269-70. "Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it. While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession." (Internal citations omitted.) State v. Lamb, 9th Dist. No. 23418, 2007-Ohio-5107, at ¶ 12. The presence of drugs in a usable form in close proximity to a defendant — such as in an automobile-can be circumstantial evidence from which constructive possession is inferred. State v. Fletcher, 9th Dist. No. 23171, 2007-Ohio-146, at ¶ 19-22. See, also, State v. Barbee, 9th Dist. No. 07CA009183, 2008-Ohio-3587, at ¶ 26. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a *Page 10 
certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 21} The evidence in this case and the reasonable inferences drawn therefrom lead this Court to conclude that Defendant's convictions for possession of marijuana and aggravated possession of methamphetamine are not against the manifest weight of the evidence. Agent Turner testified that two small plastic bundles were found on the floor of the Honda Civic underneath the driver's legs. One bundle contained methamphetamine; the second contained marijuana. Agent Turner stated that the plastic bundles would have been approximately three feet from back-seat passengers, but that those in the backseat would not have been able to stow the bundles at Defendant's feet before the stop. From the proximity of the drugs to Defendant in a usable form — and the fact that the other passengers in the car lacked the ability to place the bundles beneath Defendant's legs as he drove — it may be inferred that Defendant was knowingly in possession of the marijuana and the methamphetamine in this case. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "The trial court erred in failing to grant [Defendant's] Rule 29 motion to dismiss the charges against him at the close of the state's case."
 {¶ 22} When reviewing a trial court's denial of a motion to dismiss pursuant to Crim. R. 29, this Court assesses the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996),115 Ohio App.3d 646, 653. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386. Because sufficient evidence is required to take a *Page 11 
case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency.State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 23} Having determined that Defendant's convictions were not against the manifest weight of the evidence, it follows that they are supported by sufficient evidence as well. See id. This Court's resolution of Defendant's first and second assignments of error is, therefore, dispositive of his third, and Defendant's third assignment of error is overruled.
 {¶ 24} Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 12 
Costs taxed to Appellant.
 WHITMORE, J. DICKINSON, J. CONCUR *Page 1