DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Following a bench trial, a trial judge convicted Kreighammer Vonnjordsson of the murder of Robin Wright and of tampering with evidence because he concealed the location of the murder weapon. Mr. Vonnjordsson has argued that his convictions are against the manifest weight of the evidence and that his trial counsel was ineffective for failing to introduce certain evidence in his defense and for failing to move for acquittal. This Court affirms because the convictions are not against the manifest weight of the evidence and there is nothing in the record to demonstrate that trial counsel's performance was deficient.
 FACTS {¶ 2} Shortly after 1:00 a.m. on September 11, 2007, Akron Police officers responded to 324 East South Street after dispatchers received a call about a body lying in a nearby field. The officers found the body of 36-year-old Robin Wright with multiple stab wounds on her torso *Page 2 
and extremities. The medical examiner's office later confirmed that Ms. Wright had been fatally stabbed and ruled her death a homicide. The medical examiner further concluded that, when the attacker inflicted the fatal wounds, Ms. Wright was lying on the ground in a supine position and had attempted to defend herself with her arms and legs.
 {¶ 3} Police found Ms. Wright's body in a field that was located near several business establishments, including a convenience store and two bars. Blood droplets found around the victim's body formed a blood trail that led police to Chuck's Steakhouse, one of the two bars located near the field. Through interviews of people who had been in the area the night before and a review of video surveillance footage taken inside and outside some of the nearby establishments, police investigators were able to identify Mr. Vonnjordsson as their suspect.
 {¶ 4} The investigation revealed that Mr. Vonnjordsson, who was a regular customer at Chuck's Steakhouse and nearby CW's bar, had been to both establishments the previous evening. He first came to Chuck's Steakhouse in the late afternoon and had several beers. At some point later that evening, he went to CW's, where he continued to drink beer. He left CW's after getting into an altercation with the bouncer about the price of his beer. The bouncer recalled that Mr. Vonnjordsson had become very angry and threatened to fight him and everyone in the bar. The bartender called the police, but Mr. Vonnjordsson left before the police arrived.
 {¶ 5} Between 8:30 and 9:00 p.m., Mr. Vonnjordsson returned to Chuck's Steakhouse accompanied by a woman who was similar in appearance to Ms. Wright. He bought two beers, and he and the woman each drank one. The bartender did not notice anything about the conversation or behavior of Mr. Vonnjordsson or the woman while they were at the bar. The two left Chuck's together after staying for about 30 minutes. Shortly afterward, the bouncer at CW's observed Mr. Vonnjordsson on the video surveillance monitor walking down South Street *Page 3 
with a woman. Video surveillance footage of the area outside CW's also depicted the two walking in the direction of the crime scene.
 {¶ 6} Less than an hour after he left Chuck's Steakhouse with the woman, Mr. Vonnjordsson returned to the bar alone. The bartender observed that he immediately went to the restroom. When he came out, he asked for a towel because there were no paper towels in the restroom. After the bartender gave Mr. Vonnjordsson a towel, he wrapped it around his hand. The bartender later discovered blood all over the restroom.
 {¶ 7} The bartender further observed that Mr. Vonnjordsson was breathing heavily and was sweaty and nervous. She asked him what had happened, and he responded that "[t]he bitch tried to get smart with me." Several witnesses observed that Mr. Vonnjordsson was eager to find a ride home. He first called a former employer and asked for a ride, telling him that "[s]omething went wrong terribly" and that he needed to "get out of the neighborhood." After the former employer refused to give him a ride, Mr. Vonnjordsson was able to persuade someone at the bar to give him a ride home. While he was getting out of the car, Mr. Vonnjordsson commented to the driver about "slashing somebody up."
 {¶ 8} The next day, police went to Mr. Vonnjordsson's apartment to question him and observed that he had a bad cut on his left thumb. He asked the officers, "This is about the girl on South Street, isn't it?" Mr. Vonnjordsson later admitted that he had stabbed Ms. Wright.
 {¶ 9} Police were able to locate the murder weapon by reviewing video surveillance footage of the field where the body was found. The video depicted someone throwing an object in a westerly direction. Officers attempted to follow the path of the object and found a folding black handle knife on the other side of a fence, approximately 95 feet from where it had been thrown. The medical examiner later determined that the blade of the knife was consistent with *Page 4 
the wounds on the victim's body. Experts at the bureau of criminal identification and investigation confirmed that DNA of both the victim and Mr. Vonnjordsson was on the knife.
 {¶ 10} Forensic evidence also connected Mr. Vonnjordsson to Ms. Wright's death through the blood droplets found around the victim's body and the blood trail leading to Chuck's Steakhouse that were all confirmed to be Mr. Vonnjordsson's blood. Tests also confirmed the presence of Ms. Wright's blood on Mr. Vonnjordsson's clothing.
 {¶ 11} Mr. Vonnjordsson was charged with murder and tampering with evidence. Following a bench trial, he was convicted of both crimes. Mr. Vonnjordsson has appealed, assigning two errors.
 MANIFEST WEIGHT {¶ 12} Mr. Vonnjordsson's first assignment of error is that his convictions of murder and tampering with evidence are against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 13} Mr. Vonnjordsson was convicted of murder under Section 2903.02(A) of the Ohio Revised Code, which provides that "[n]o person shall purposely cause the death of another." Mr. Vonnjordsson has conceded that the evidence established that he was with Ms. Wright the night that she died and that he later admitted to police that he had stabbed her. He has not disputed that he purposely caused her death, but instead has maintained that the factfinder lost its way by finding him guilty of murder rather than voluntary manslaughter. *Page 5 
 {¶ 14} Section 2903.03(A) of the Ohio Revised Code defines voluntary manslaughter as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force."
 {¶ 15} Voluntary manslaughter is an inferior degree offense of murder because it includes the elements of the higher-degree offense but also includes mitigating elements. State v. Rhodes, 63 Ohio St. 3d 613, 617
(1992). Because it is a mitigated offense, the defendant bears the burden of persuading the factfinder, by a preponderance of the evidence, that he committed the offense of voluntary manslaughter rather than murder. Id. at syllabus. He must establish that he "acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force."Id.
 {¶ 16} Although, in his opening statement, Mr. Vonnjordsson's lawyer suggested that Mr. Vonnjordsson would testify in his own defense, the defense presented no evidence at trial. A review of the evidence that the state presented to the trial court fails to reveal any evidence that Mr. Vonnjordsson was provoked by Ms. Wright. In fact, there was very little evidence about the nature of the interaction between Mr. Vonnjordsson and Ms. Wright before he stabbed her to death.
 {¶ 17} The evidence revealed only that Mr. Vonnjordsson and Ms. Wright walked into Chuck's Steakhouse together and each drank one beer before they left together and headed down South Street. The bartender at Chuck's did not recall anything about their conversation or interaction while they were at the bar. They apparently walked down South Street to the field *Page 6 
where Mr. Vonnjordsson killed Ms. Wright. There was absolutely no evidence, direct or circumstantial, that Ms. Wright provoked Mr. Vonnjordsson in any manner.
 {¶ 18} The only evidence about what transpired between Ms. Wright and Mr. Vonnjordsson during the moments before her death is that Mr. Vonnjordsson stabbed his victim repeatedly even after she had assumed a fetal position on the ground. Even if Mr. Vonnjordsson's act of repeatedly stabbing her could have suggested an act of rage, there was no evidence that his act was in response to provocation by the victim.
 {¶ 19} Mr. Vonnjordsson points only to evidence that he had consumed several beers and may have been intoxicated at the time he killed Ms. Wright and that he cooperated with police during the investigation. This evidence, however, has no bearing on whether Ms. Wright provoked his actions. Although Mr. Vonnjordsson's voluntary intoxication may have once been a potential defense to the crime of murder, it no longer is. Prior to October 2000, evidence of voluntary intoxication was available as an affirmative defense if a defendant was charged with a specific intent crime and could demonstrate that he was "so intoxicated as to be mentally unable to intend anything." State v. Otte, 74 Ohio St. 3d 555,564, quoting Sate v. Jackson, 32 Ohio St. 2d 203, 206 (1972). As amended effective October 27, 2000, however, Section 2901.21(C) of the Ohio Revised Code provides that "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."
 {¶ 20} Mr. Vonnjordsson was also convicted of tampering with evidence. Section 2921.12(A)(1) of the Ohio Revised Code provides, in relevant part, that "[n]o person, knowing that an official proceeding or investigation . . . is about to be or likely to be instituted, shall . . . conceal, or remove any . . . thing, with purpose to impair its . . . availability as evidence in such *Page 7 
proceeding or investigation." As was detailed above, video surveillance footage depicted a man in the field throwing an object over the fence. Police officers traced the apparent path of the object and found the knife that had been used to kill Ms. Wright. They found the knife on the other side of a fence, approximately 95 feet from where it had been thrown. Forensic testing identified the DNA of both Ms. Wright and Mr. Vonnjordsson on the knife. The factfinder could reasonably conclude from this evidence that Mr. Vonnjordsson had thrown the murder weapon away from the murder scene in an attempt to conceal it from police, knowing that they would conduct an investigation into the murder when they discovered Ms. Wright's body lying in the field.
 {¶ 21} Mr. Vonnjordsson has failed to demonstrate that the trial court lost its way in convicting him of murder and tampering with evidence. Accordingly, his first assignment of error is overruled.
 INEFFECTIVE ASSISTANCE {¶ 22} Mr. Vonnjordsson's second assignment of error is that his trial counsel was ineffective for failing to call him as a witness in his own defense so that his prior statement to police could have been admitted into evidence. Mr. Vonnjordsson has suggested that his statement to police would have helped to prove that he committed voluntary manslaughter rather than murder. Mr. Vonnjordsson has further maintained that his trial lawyer was ineffective for failing to move for acquittal.
 {¶ 23} To establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington, 466 U.S. 668, 687 (1984). A "deficient performance" is one that fell below an objective standard of reasonableness. Id. at 687-88. To *Page 8 
establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.
 {¶ 24} There is nothing in the record to support Mr. Vonnjordsson's claim that trial counsel committed errors or that the defense suffered any prejudice. The state presented overwhelming evidence that Mr. Vonnjordsson purposely killed Ms. Wright, and there was no evidence to suggest that he did so due to any provocation by Ms. Wright. Thus, his assertion that trial counsel's performance was deficient because counsel failed to move for a judgment of acquittal is baseless.
 {¶ 25} Mr. Vonnjordsson has further asserted that his trial counsel should have called him to testify and should have introduced his statement to police to establish that he committed voluntary manslaughter rather than murder. Mr. Vonnjordsson has maintained that his statement to police was fundamental to his defense. His police statement is not in the record, however, so it is impossible for this Court to determine whether it might have helped to mitigate his murder charge.
 {¶ 26} There is also nothing in the record to explain why Mr. Vonnjordsson did not testify. Mr. Vonnjordsson has maintained that "it is unclear from the record" whether counsel fully advised him of the consequences of his decision not to testify in his own defense. On direct appeal, however, the defendant has the burden of demonstrating ineffective assistance of counsel on the appellate record. This Court will not infer ineffectiveness from a silent record. See State v.Murphy, 91 Ohio St. 3d 516, 542 (2001). The second assignment of error is overruled. *Page 9 
 CONCLUSION {¶ 27} Mr. Vonnjordsson's assignments of error are overruled. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
WHITMORE, J., MOORE, P. J., CONCUR *Page 1