[Cite as *State v. Parker*, 2012-Ohio-3078.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97449

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTHONY PARKER

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545274

**BEFORE:** Stewart, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 5, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY: Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Margaret A. Troia
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶1} A jury found defendant-appellant Anthony Parker guilty of a single count of felonious assault in connection with an incident in which he crushed the victim's larynx by strangulation during a confrontation. In this appeal, Parker makes the sole complaint that the verdict is against the manifest weight of the evidence. We conclude that minor inconsistencies in the evidence were not so compelling that the jury necessarily lost its way by finding that other evidence was competent and credible enough to warrant a conviction.

{¶2} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or

disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶3} Both Parker and the victim agreed on the background giving rise to the confrontation that led to the criminal charges. Parker and two nephews traveled from New Jersey the weekend before Thanksgiving to stay at a house that the victim shared with his girlfriend, who was also Parker's sister. While attending a party with the victim, Parker gave the victim money and asked him to procure a bag of marijuana. The victim obtained the marijuana and gave it to Parker. A few days later, Parker complained that he did not get his money's worth — he accused the victim of skimming marijuana from the bag before handing it over. The victim denied Parker's allegations, but tensions grew over the next few days to the point where the victim began carrying a hammer for protection.

{¶4} The testimony diverged on the actual events of the incident. On Thanksgiving Day, November 25, 2011, the victim said he was alone in the living room watching television when Parker entered. Parker grabbed him by the neck and pressed his thumbs into his throat, saying, "[y]ou thought I was going to forget it." The victim had trouble breathing and began "fading out." He tried calling for help, but Parker told him to be quiet. As the victim struggled to breathe, Parker said, "I got your ass now." The victim tried kicking a glass coffee table to make noise and then broke free from Parker. The girlfriend heard the commotion from upstairs and came down to see Parker and the victim standing apart. She did not witness the incident but saw that the victim's

nose was bloodied. She told both men to leave immediately. The victim walked a very short distance to a friend's house. Seeing that the victim was having trouble breathing, the friend wanted to call an ambulance. The victim told him not to call an ambulance because he thought he could catch his breath. The friend left the house to run a quick errand. He returned 30 minutes later to find the victim still struggling to breathe, so he called for emergency help. The victim was taken to the hospital and later required surgery on his throat.

{¶5} Parker testified that he came downstairs on Thanksgiving Day to find the victim on the couch, watching television. The victim was surprised by Parker's appearance and started to approach him. A struggle ensued and the two fell onto the couch. A glass coffee table was kicked over during the scuffle, and the girlfriend came downstairs and broke up the fight. Parker and the nephews left for New Jersey after being ordered out of the house by the victim's girlfriend.

{¶6} Both Parker and the victim testified that there had been a scuffle in the living room. There is likewise no disagreement that the victim's injuries were sufficient to establish the "serious physical harm" element of felonious assault under R.C. 2903.11(A)(1). The only question for resolution by the jury was whether Parker caused the victim's injuries.

{¶7} Parker argues that the victim's injuries must have been caused after the incident in the living room. He notes that the victim did not have difficulty speaking immediately after the incident and that the victim did not immediately seek medical

assistance. He further notes that the 911 recording shows that the victim's friend told the dispatcher that the victim had been robbed by two men, that medical records from the hospital state that the victim suffered his injuries while "playing cards," and that the timeline given by the victim did not match medical records. Finally, Parker notes that the victim had a lengthy history of substance abuse that made him less credible and that lab work done at the hospital revealed the presence of opiates and marijuana in the victim's blood.

{¶8} Although the victim could still speak immediately after the incident and he did not immediately seek medical care, the surgeon who operated on the victim testified that throat injuries of the kind suffered by the victim do not necessarily manifest immediately after the trauma. The surgeon testified that the effects from "compression of the neck" could manifest "a day later or even weeks later." Given this testimony, it was possible that the victim's breathing could have appeared uncompromised when the girlfriend broke up the incident and ordered the men to leave the house. Certainly, the injury had manifested itself by the time the victim went to his friend's house — the friend testified that the victim was having so much difficulty breathing that he wanted to call an ambulance. Testimony from an emergency medical technician who responded to the friend's house found the victim was "passing air" but that the victim was complaining about his difficulty breathing. By the time the victim arrived at the hospital, the surgeon found that the victim showed so much "airway compromise" that he was intubated and

placed on a ventilator. He remained in that condition until surgery was performed nearly two weeks later.

{¶9} As for the 911 call and the friend's statement that the victim had been robbed by two men, the friend explained that the victim said that he had been "jumped or something." The friend continued to state that the victim told him that there were two people involved, but said "[h]e came in and said he got jumped. I figured they was trying to rob him or something. I don't know." This testimony suggests that the friend may have been reading into the victim's story, particularly since the friend conceded that he never heard the entire story of what happened because the victim "never could catch his breath to talk like his own person."

{¶10} The origin of a notation in the medical record stating that the victim's injuries occurred "while playing cards" is obscure. It was contained in a consultation note prepared on December 7, 2010, nearly two weeks after the incident. The consulting physician must not have obtained the medical history from the victim because the evidence showed that the victim had been intubated upon his arrival at the hospital and was breathing with the assistance of a ventilator. For obvious reasons, the victim was sedated, a fact stated in the consultation note and confirmed by the girlfriend who described the victim as being in a "coma" for two weeks before his surgery. The consultation note also stated that "[the victim] opens eyes but does not follow commands." In fact, the decision to perform surgery on the victim was made by two other physicians "as the patient was unable to consent for himself * * *." The clear

import of this evidence was that the victim had been unable to communicate, so the consulting physician could not have learned from the victim himself that the injuries occurred during a card game. That information must have come from a third party, so it had no direct effect on the victim's credibility.

{¶11} It is unclear why the victim's history of substance abuse would call his credibility into question in this case. It is true that blood work performed on the victim after his admission to the hospital showed him to be under the influence of opiates and marijuana, but there was no indication that these drugs impaired his ability to recall events accurately. In any event, testimony by other witnesses corroborated the important parts of the victim's testimony. There was no question that a scuffle occurred in the living room. The state offered as a motive for the attack Parker's continuing dissatisfaction with being shorted on a bag of marijuana, a fact confirmed by the girlfriend. Following the attack, the victim immediately went to his friend's house where his breathing difficulties were noted. Testimony by the treating physician confirmed that the victim's breathing difficulties might not have immediately manifested, but could have worsened over time, an opinion consistent with the state's evidence.

{¶12} Having reviewed the evidence and weighed the credibility of the witnesses, we have no reason to conclude that the jury's verdict was against the manifest weight of the evidence. The assigned error is overruled.

{¶13} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MELODY J. STEWART, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
SEAN C. GALLAGHER, J., CONCUR