[Cite as *State v. Quinones*, 2016-Ohio-3287.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

NANCY QUINONES

    Appellant

C.A. No.    15CA010722

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14CR088841

DECISION AND JOURNAL ENTRY

Dated: June 6, 2016

MOORE, Presiding Judge.

{¶1}    Defendant, Nancy Quinones, appeals from the judgment of the Lorain County Court of Common Pleas. We affirm.

I.

{¶2}    In 2014, the Lorain County Grand Jury indicted Ms. Quinones on one count of trafficking in drugs in violation of R.C. 2925.03(A)(2) and one count of possession of drugs in violation of R.C. 2925.11(A), with a major drug offender specification attendant to both counts and a forfeiture specification attendant to the trafficking count. These charges stemmed from a controlled mail delivery to Ms. Quinones of a significant amount of cocaine.

{¶3}    Ms. Quinones entered not guilty pleas to the charges. Just prior to the commencement of trial, Ms. Quinones indicated that she wished to waive her right to a jury trial. She signed a jury waiver, and, after a lunch recess, the case proceeded to a bench trial. The trial court found Ms. Quinones guilty of all of the charges and specifications. In a journal entry dated

December 16, 2014, the trial court merged the possession count with the trafficking count, and it imposed an aggregate sentence of eleven years of incarceration on the trafficking conviction with the attendant major drug offender specification.

{¶4} Ms. Quinones timely appealed from the sentencing entry, and she now raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR AND WAS WITHOUT JURISDICTION TO CONDUCT A BENCH TRIAL BECAUSE THE SUBSTANCE OF THE JURY WAIVER DID NOT SUBSTANTIALLY COMPLY WITH THE SUGGESTED WORDING IN R.C. 2945.05.

{¶5} In her first assignment of error, Ms. Quinones argues that the trial court erred in proceeding with her bench trial because the written jury waiver in this case did not substantially comply with the wording set forth in R.C. 2945.05. We disagree.

{¶6} R.C. 2945.05 provides that, "[i]n all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury." "[T]o be valid, a [jury] waiver must meet five conditions. It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 9; R.C. 2945.05. This waiver should state in substance as follows:

> I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.

R.C. 2945.05.

**{¶7}** "Although 'Ohio courts have declined to find that the language of the waiver must be a verbatim recitation of R.C. 2945.05,' the content of the waiver must be in '[s]ubstantial compliance' with the suggested language." *State v. Woodbridge*, 9th Dist. Summit No. 26911, 2014-Ohio-1338, ¶ 6, quoting *State v. Webb*, 10th Dist. Franklin No. 10AP-289, 2010-Ohio-6122, ¶ 26-27, citing *State v. Townsend*, 3d Dist. Marion No. 9-03-40, 2003-Ohio-6992, ¶ 16.

**{¶8}** Here, Ms. Quinones signed a form that states:

> The Defendant waives her constitutional right to a jury trial and consents to this matter being tried to this one judge court. Furthermore, Defendant acknowledges that at a jury trial the Defendant would have the right to participate in the selection of twelve jurors, to exclude prospective jurors with and/or without cause and to a unanimous verdict.

**{¶9}** Ms. Quinones maintains that the waiver she executed did not comply with R.C. 2945.05 because it failed to substantially state the statutory language in that (1) it is not stated in the first person, (2) it does not state that the waiver is made voluntarily, (3) it does not provide that Ms. Quinones would "relinquish" her right, (4) it does not provide that Ms. Quinones "elects to be tried by a Judge of the Court in which the said cause may be pending[,]" and (5) it does not state that Ms. Quinones "fully understands that under the laws of this state, she has a constitutional right to a trial by jury." (Emphasis omitted.) *See* R.C. 2945.05.

**{¶10}** In support of her position that the waiver does not substantially comply with the statutory language, Ms. Quinones relies on this Court's decision in *Woodbridge*, 2014-Ohio-1338, where we held that a jury waiver did not substantially comply with the statutory language because the waiver did not indicate that the defendant fully understood that he had a constitutional right to a jury trial. *Id.* at ¶ 7, 9. Ms. Quinones maintains that, similarly, because of the differences between the statutory language and the waiver here, it failed to indicate that

Ms. Quinones understood her rights. Instead, she maintains that the waiver reads like a court order.

{¶11} However, in *Woodbridge*, the written waiver provided "I do hereby knowingly and voluntarily waive my right to have my case tried by a jury of my peers and consent to my case being tried by the Court." *Id.* at ¶ 2, 6. We concluded that this waiver was substantially similar to the first sentence provided in the statutory language. *Id.* at ¶ 7. However, there was nothing in the written waiver indicating that the defendant understood that he had a constitutional right to a jury trial. *See id.* Here, the waiver described the right as Ms. Quinones' "*constitutional right* to a jury trial[.]" (Emphasis added.) Further, although the best practice may be for the waiver to contain the statutory language verbatim, we cannot say that the writing of the waiver in third person as opposed to first person resulted in the waiver not substantially complying with the statutory language.

{¶12} Accordingly, Ms. Quinones' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

[MS. QUINONES'] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} In her second assignment of error, Ms. Quinones argues that her conviction was against the manifest weight of the evidence. We disagree.

{¶14} When a defendant asserts that her conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶15} Here, the trial court found Ms. Quinones guilty of trafficking in drugs in violation of R.C. 2925.03(A)(2) and possession of drugs in violation of R.C. 2925.11(A). R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." Trafficking in cocaine, where the amount of cocaine exceeds 100 grams, is a first degree felony. R.C. 2925.03(C)(4)(g). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶16} At trial, the State presented the testimony of postal inspectors and officers involved in the controlled delivery and investigation, and it submitted exhibits, including a report from the Lorain County Crime Lab. The inspectors testified that they had received information from another postal inspector stationed in Puerto Rico regarding two suspicious packages. The postal inspector in Puerto Rico had obtained a search warrant for these packages. One package, containing $12,000 in cash, was labeled as sent from a fictitious address of 1431 West 17th Street, Lorain, Ohio, to an address in Puerto Rico. The other package, containing approximately 500 grams of cocaine, was labeled as sent from an address in Puerto Rico to a Brenda Rivera at 1880 East 37th Street, Lorain, Ohio. The cocaine had been wrapped in cellophane and placed inside of oatmeal containers.

{¶17} The inspectors and officers testified that postal inspectors contacted the City of Lorain Police Department and arranged for a controlled delivery of the package on January 16, 2014. The package addressed to Lorain, Ohio was sent directly to a postal inspector, who placed a GPS monitoring device in the cellophane wrapping of one of the bundles of cocaine. The

inspector also equipped the mail package with a radio-wire which would alert officers when the package was opened.

{¶18}  On January 16, 2014, an officer watching the house, awaiting a postal inspector to make the controlled delivery, noticed a maroon car parked on the street outside of the East 37th Street residence.  The officers learned that the car was registered to Angel Quinones of 1435 West 17th Street, Lorain, Ohio.  The officers found this significant, as the cash package that had been searched in Puerto Rico was mailed from a fictitious address of 1431 West 17th Street, Lorain, Ohio.

{¶19}  At approximately 12:37 p.m., a postal inspector delivered the package containing the cocaine to the East 37th Street address listed on the shipping label.  A woman, later identified as Ms. Quinones, answered the door.  The postal inspector indicated to Ms. Quinones that he had a package for a Brenda Rivera.  Ms. Quinones suggested that the residence was a correct location for Brenda Rivera, and she signed for the package, signing the name Brenda Rivera.  Approximately ten to fifteen minutes after the delivery of the package, Ms. Quinones emerged from East 37th Street residence carrying a black duffle bag.  She placed the duffle bag in the trunk of the maroon car, and she drove away from the residence.  The officers effectuated a stop of Ms. Quinones shortly thereafter, at which time they recovered the package containing the cocaine from the black duffle bag in the trunk of the car.  The package had not been opened, although most of the shipping label had been torn off of the package.  Upon being stopped, Ms. Quinones indicated that she was intending to dump the package, and she stated that she lived at 1435 West 17th Street.

{¶20}  An officer traveled to the 1435 West 17th Street residence while other officers obtained a search warrant for that residence.  While awaiting the search warrant, the officer

surveying the residence saw a man, later identified as Angel Quinones, Ms. Quinones' husband, twice exit the house, look down the street, and return to the home. Officers obtained a search warrant of the Quinoneses' residence. Inside, officers located oatmeal containers of the same type that were used in concealing the cocaine in the mail package, empty priority mail boxes, baggies, plastic gloves, and numerous small rubber bands. Inside a coat, which Mr. Quinones told officers belonged to his wife, the officers located a letter addressed to Nancy Gonzalez at 1435 West 17th Street. The letter was from the USPS Asset Forfeiture Unit in Washington, D.C. The officers also located "stacks" of cash in a nightstand. The officers obtained a cell phone from Ms. Quinones' person, and a cell phone from Mr. Quinones.

{¶21} After extracting information from the cell phones, the officers found the following text messages were sent between the phones on the day of the delivery, commencing at about 12:30 p.m., summarized on an exhibit prepared by one of the officers as follows:

**NANCY (NC) AND ANGEL QUINONES (AC) TEXT MESSAGE CONVERSATION:**

| Time | Person | Message |
| --- | --- | --- |
| 12:30:52 | AC | You Ok |
| 12:31:26 | NC | Yea still waiting |
| 12:31:39 | AC | Ok |
| * * * | | |
| 12:38:03 | NC | goin home |
| 12:38:16 | AC | Ok |
| 1:05:31 | AC | You ok |
| 1:07:55 | AC | You ok |
| 1:34:05 | AC | Babe you good call me |

{¶22} In addition to these texts, officers discovered that there were over ten cell phone calls made between the phones on January 16th prior to the Quinoneses being taken into custody. Further, on the phone obtained from Ms. Quinones, there existed deleted photos of other mail packages and labels.

{¶23} The package that the officers utilized in the controlled delivery was taken into the possession of the officers and returned to the police station. A postal inspector and other officers removed the GPS monitoring system and radio-wire from the package, and they transferred the cocaine to plastic bags to send to a lab for testing. According to the lab report, which the prosecutor referred to as a "stipulated" exhibit that was submitted, without objection, in lieu of the testimony of the forensic analysis who prepared the report, the package delivered to Ms. Quinones contained approximately 610 grams of cocaine.

{¶24} On behalf of the defense, Angel Quinones testified. He indicated that he had pleaded guilty to drug charges, taking responsibility for the package at issue here. He maintained that Ms. Quinones was unaware of the contents of the package, but he had told her to pick up the package, which was being delivered to the home of her cousin Brenda, because it contained a present for Ms. Quinones' niece's or nephew's birthday. Mr. Quinones maintained that he is not employed. He maintained that the cash located in his nightstand was his, and Ms. Quinones was not aware of it. Also, he never informed Ms. Quinones as to his drug activities, and she did not question him about the number of containers of oatmeal at the house. He did not tell her what was contained in the package that he asked her to pick up, nor did he recall her asking what it contained or why it was being delivered to a different address.

{¶25} On appeal, Ms. Quinones maintains that her conviction was against the manifest weight of the evidence because of breaks in the chain of custody of the mail package, which she

maintains was the most significant evidence against her. "The chain of custody relates to the authentication or identification process set forth in Evid. R. 901(A)[.]" *State v. Meyers*, 9th Dist. Summit Nos. 23864, 23903, 2008-Ohio-2528, ¶ 49. However, "[t]he [S]tate is not required to prove a perfect, unbroken chain of custody." *Id.*, quoting *State v. Semedo*, 5th Dist. Stark No. 2006 CA 00108, 2007-Ohio-1805, ¶ 12. "A break in the chain of custody, if any, goes to the weight or credibility of the evidence, and not its admissibility." *Meyers* at ¶ 49, quoting *Semedo* at ¶ 12.

{¶26} In support of her position that the evidence speaking to the contents of the mail package should not be given weight due to breaks in the chain of custody, she points out that the postal inspector in Puerto Rico indicated that the package contained 500 grams of cocaine, however, the lab report indicated that the package contained 610 grams of cocaine.

{¶27} Our review of the evidence admitted at trial indicates that, although the postal inspector who initially opened the package in Puerto Rico did not testify at the hearing, photographs of the contents of the package in Puerto Rico were admitted without objection. The photographs display two packages, wrapped in cellophane, inside oatmeal containers, packed in the package with the same shipping label as the package here. Although the testimony at trial indicated that the postal inspector in Puerto Rico had represented that there was approximately 500 grams of cocaine in the package, there is no indication that the postal inspector in Puerto Rico removed the entirety of the cocaine from its cellophane and other items from the packaging of the bundle to determine a precise weight, and thus the weight could have been an estimate. Two photographs taken by the postal inspector in Puerto Rico show the bundles of cocaine, still covered in cellophane, and a red material, on scales. One picture shows the digital scale display depicting the number 1, followed by a space, and then followed by the number 12.8. Another

picture shows what appears to be the same unwrapped bundles on the digital scale, with the display depicting the number 0.820. The unit of measurement of weight cannot be seen clearly on the scale display, but given the testimony as to the weight of the packages, it does not appear that the inspector weighed the packages in grams or that the packaging was removed prior to the inspector concluding that the packages contained five hundred grams of cocaine. The postal inspector who received the package for the controlled delivery, testified that it was in the same condition as the pictures taken in Puerto Rico had displayed.

{¶28} After a review of the record, we cannot conclude that this is the extraordinary case where the trial court created a manifest miscarriage of justice in finding Ms. Quinones guilty. Accordingly, Ms. Quinones' second assignment of error is overruled

III.

{¶29} Ms. Quinones' assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

GIOVANNA V. SCALETTA-BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.